64 F.3d 316
 2 Wage & Hour Cas.2d (BNA) 1514
 Robert REICH, Secretary of Labor, United States Department
of Labor, Plaintiff-Appellee,
v.
ABC/YORK-ESTES CORPORATION, doing business as Heavenly
Bodies, Michael G. Welleck, individually, and
Loumar Corporation, Defendants-Appellants,
and
Rita Erwin and Tammy Senter, Proposed Intervenors-Appellants.
 Nos. 94-3571, 94-3657.
 United States Court of Appeals,
Seventh Circuit.
 Argued April 21, 1995.
Decided Aug. 28, 1995.
 
 Janet M. Graney, Denise C. Hockley-Cann, Christine E. Zuehlke, Dept. of Labor, Chicago, IL, William J. Stone (argued), Anne Payne Fugett, Dept. of Labor, Office of Sol., Washington, DC, for Robert Reich in No. 94-3571.
 Michael J. Rovell, Lisa I. Fair, Chicago, IL, Robert E. Bull, Altheimer & Gray, Chicago, IL, Shannon M. Heilman, Adamski & Conti, Chicago, IL, for ABC/York-Estes Corp., and Michael G. Welleck in No. 94-3571.
 Harvey M. Silets, James M. Witz, Katten, Muchin & Zavis, Chicago, IL, for Loumar Corp., in No. 94-3571.
 J. Stephen Walker (argued), Chicago, IL, for Rita Erwin and Tammy Senter in No. 94-3571.
 Janet M. Graney, Denise C. Hockley-Cann, Christine E. Zuehlke, Dept. of Labor, Chicago, IL, William J. Stone (argued), Anne Payne Fugett, Dept. of Labor, Office of Sol., Washington, DC, for Robert Reich in No. 94-3657.
 Michael J. Rovell (argued), Lisa I. Fair, Chicago, IL, Shannon M. Heilman, Adamski & Conti, Chicago, IL, for ABC/York-Estes Corp., and Michael G. Welleck in No. 94-3657.
 Before BAUER, CUDAHY, and MANION, Circuit Judges.
 BAUER, Circuit Judge.
 
 
 1
 ABC/York-Estes Corporation operates the Old Higgins Inn, an entertainment establishment featuring female exotic dancers, located in Elk Grove, Illinois. Pursuant to an investigation of ABC's pay practices at the Inn, the Secretary of Labor brought this suit against ABC for violations of the Fair Labor Standards Act. The complaint alleged that since August 1989, ABC has continuously violated the minimum wage, overtime, and recordkeeping provisions of the Act. See 29 U.S.C. Secs. 206, 207, 211, 215.
 
 
 2
 After ABC failed to respond to the Secretary's summons and complaint, the district judge granted the Secretary's motion for a default judgment. ABC then filed an appearance and requested that the district judge vacate the default judgment. Based upon ABC's express assurances that it would comply with all outstanding obligations and discovery requests, the district court vacated the default judgment. Those assurances were worthless; ABC committed a litany of discovery violations over the ensuing two years of this litigation. The Secretary again moved for sanctions and requested that yet another default judgment be entered. Pursuant to that motion, the magistrate judge issued a report recommending that the Secretary's motion be granted and a default judgment be entered. ABC offered no objection to that recommendation, and the district judge adopted the magistrate judge's report and recommendation and entered a default judgment.
 
 
 3
 The issues in this consolidated appeal do not require us to undertake anything as interesting as exposing the ins and outs of operating an exotic dancing establishment. Rather, the first issue requires us to examine a more pedestrian matter involving procedure. After the second default judgment was entered, the parties were preparing a status report for the district judge in anticipation of a hearing to determine liquidated damages. On the twenty-eighth day after the default judgment was entered, the Secretary's counsel revealed to ABC's lawyers that he was proceeding under the assumption that an injunction had been entered by the district judge enjoining ABC from future violations of the Act. ABC's counsel responded that it did not read the order that way and filed a notice of appeal.
 
 
 4
 This led to the unlikely, but not unprecedented, episode in which the counsel for ABC, an appellant, began his argument by urging this court to dismiss his client's appeal because it lacks jurisdiction. ABC's counsel submits that this argument is not as incongruous as it first may seem. ABC claims that there is no injunction and that it was put in this awkward position by the timing of the appellate process. ABC believed that it could not gain confirmation from the district judge in time and was forced into this appeal. ABC, therefore, looks to us, rather than the district judge, to decide whether it was actually enjoined by the district judge. The Secretary of course argues that the district judge indeed issued an enforceable injunction, that we have jurisdiction to hear ABC's appeal, and that, while we are at it, we should uphold the injunction. We find that there is no enforceable injunction, which compels us to dismiss this appeal for lack of jurisdiction.
 
 
 5
 That portion of the district judge's memorandum opinion and order on which the Secretary relies is as follows:
 
 
 6
 Plaintiff's Motion for Sanctions is granted against defendants ABC/York-Estes Corporation doing business as Heavenly Bodies and Michael G. Wellek, individually and doing business as Heavenly Bodies, for the reasons stated in the Report and Recommendation. The Answer filed May 3, 1993 by these defendants is stricken. The allegations of plaintiff's Amended Complaint are deemed admitted by these defendants. A default judgment on liability and findings as to all facts relating thereto are entered on the merits in favor of the plaintiff and against these defendants as prayed for in the Amended Complaint, which states: "[P]laintiff prays for judgment, pursuant to section 17 of the Act, permanently enjoining and restraining defendants, their officers, agents, servants, employees, and those persons in active concert or participation with them who receive actual notice of any such judgment, from violating the provisions of sections 6, 7, 11, 15(a)(2) and 15(a)(5) of the Act, and for such other and further relief as may be necessary or appropriate, including the restraint of any withholding of payment of unpaid minimum wage and overtime compensation, with interest as applicable, found by the court to be due under the Act to defendants' employees. Said interest is, where applicable, to run from the date such back wages become due until the date back wages are paid." (Amended Complaint Ad damnum, pp. 5-6.)The Secretary argues that the district judge's intention to issue an injunction was effectuated by the incorporation of the amended complaint into the order. If that is so, there is no valid injunction for two distinct, yet related, reasons: the alleged injunction fails to satisfy the requirements of both Federal Rules of Civil Procedure 58 and 65(d).
 
 
 7
 The violations of Rules 58 and 65(d) in this case are, for the most part, straightforward and obvious. Here, the district judge issued no separate document setting forth the judgment enjoining ABC from future violations. Rule 58, however, requires one. It states: "Every judgment shall be set forth on a separate document. A judgment is effective only when so set forth and when entered as provided in Rule 79(a)." Without such a separate document, Rule 58 is violated and there is no enforceable judgment.
 
 
 8
 A violation of Rule 58 is not necessarily jurisdictional. The United States Supreme Court, in Bankers Trust Co. v. Mallis, 435 U.S. 381, 384, 98 S.Ct. 1117, 1119-20, 55 L.Ed.2d 357 (1978), held that compliance with Rule 58 is jurisdictional in the sense that it determines when the time for appeal begins to run, but it is not to be so rigidly enforced that parties may not waive it. Id. In that case, the parties agreed that the district court's failure to enter a judgment was simply an oversight. Id. at 387-88, 98 S.Ct. at 1121-22. The Court held that both parties could waive the "separate document" requirement of Rule 58 if the violation did not mislead or prejudice either party and therefore affirmed the Court of Appeals' exercise of jurisdiction. Id. at 387, 98 S.Ct. at 1121.
 
 
 9
 A more severe implication of a Rule 58 violation presented itself to this court in Bates v. Johnson, 901 F.2d 1424 (7th Cir.1990). In that case, the defendant, the State of Illinois, admitted that it had failed to comply even slightly with a consent decree entered in the district court regarding visitation rights of parents from whom custody of their children had been taken. Id. at 1426-27. Illinois then attempted to exercise an option under the consent decree to change its rules; this change would have effectively unshackled the state from the strictures of the decree. Id. To exercise this option, the consent decree required Illinois to gain the district judge's approval; it was not forthcoming. The district judge denied the state the change and awarded sanctions against it. Id. The district judge went one step further and orally "enjoined" Illinois from exercising its "escape hatch." Id. at 1427. The judge, however, refused to enter a judgment to that effect or even issue a written order. Id.
 
 
 10
 We held that this was an obvious violation of Rule 58 which rendered the "injunction" a nullity. Id. at 1428. Without a valid injunction from which to appeal, we dismissed the appeal "on the ground that the appellant does not seek relief from any provisions of the orders from which the appeals have been taken." Id. at 1429. In short, this violation of Rule 58 meant there was no judgment, final or otherwise, necessary to our appellate jurisdiction pursuant to 28 U.S.C. Sec. 1291. Our holding in Bates recognized, particularly in light of Mallis, that a party can elect to stand on the rules and deny this court jurisdiction if it so chooses.
 
 
 11
 Our decision in Bates is enough to compel the dismissal of ABC's appeal in this case. There is no separate document to satisfy Rule 58, and ABC does not wish to waive its right to strict enforcement of this rule. That resolves the issue.
 
 
 12
 But the violation of Rule 58 takes on greater severity when viewed alongside the violation of Rule 65(d). This rule, entitled Form and Scope of Injunction or Restraining Order, states: "Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained...." In the instant case, that portion of the district judge's order on which the Secretary relies offers no specificity with respect to the alleged injunction. And, while an injunction regarding the Act need not be laboriously detailed, see McComb v. Jacksonville Paper Co., 336 U.S. 187, 192, 69 S.Ct. 497, 500, 93 L.Ed. 599 (1949), it must say something about the conduct enjoined. Moreover, to the extent that the district judge's order reflects an intent to enjoin ABC from future conduct, it does so only by reference to the complaint, a practice obviously prohibited by the rule. If this was to an injunction, it does not remotely conform to the dictates of Rule 65(d).
 
 
 13
 The consequence of the failure of an injunction to comply with Rule 65(d) is also quite dramatic. The purpose of the rule is "to provide a solid foundation for any subsequent proceeding to enforce the injunction, as by a motion to hold the defendant in contempt." Chicago & North Western Transp. Co. v. Railway Labor Exec. Ass'n, 908 F.2d 144, 149 (7th Cir.1990). The failure to comply with 65(d) renders the order issued by the district court not an injunction and places ABC under no obligations. Id. "[A]n order that is not actually or at least potentially coercive ... does not impose the type of tangible harm that Article III requires for standing to seek judicial relief, including relief in the form of an appellate judgment." Id. In this case, by virtue of the failure to comply with Rule 65(d), there is no injunction, and we lack jurisdiction to hear ABC's appeal.
 
 
 14
 We feel duty-bound to reveal that we did not dismiss the appeal in Chicago & North Western for lack of jurisdiction; we held that there had simply been a technical, but not substantial, violation of the rule. In that case, there had been a preliminary injunction imposed upon the defendant, and the plaintiff moved the district court to make the preliminary injunction permanent. Id. at 149. The district court granted the motion--"we grant [plaintiff's] motion for a permanent injunction"--but failed to provide the type of detail in that order required by Rule 65(d). Id. We characterized it as a technical violation because both parties and the judge knew precisely what conduct was enjoined; the judge simply made the preliminary injunction permanent. Id. at 150. Neither party could claim ignorance or prejudice, and a sufficient record had been developed setting the boundaries of the injunction in the proceeding at which the motion for a preliminary injunction was granted. Id.
 
 
 15
 The violation here is more than technical; it is definitely substantial. Not only is ABC in the dark regarding what conduct might have been enjoined, it has no idea whether an injunction has even been entered. For that matter, neither do we. Without an injunction that complies with these two rules, no one save the district judge can ascertain whether an injunction exists or what it enjoins. Dismissal is therefore proper.
 
 
 16
 It is interesting to note that both Bates and Chicago & North Western involved violations of both Rules 58 and 65(d). In each case, we focused on just one rule, even though we briefly touched on the other to support our holdings. In this case, we focus on both rules, but give them separate treatment. While the failure to comply with either rule compels dismissal of ABC's appeal, that both rules were so clearly violated unmistakably demonstrates that the district judge had absolutely no intention of enjoining ABC from future conduct.[1] In short, "[a]n injunction that has no binding force cannot be appealed." The Original Great Am. Chocolate Chip Cookie Co. v. River Valley Cookies Ltd., 970 F.2d 273, 276 (7th Cir.1992) (citing Bates, 901 F.2d at 1428).
 
 
 17
 The other issue in this case is unrelated to the first. This action was filed by the Secretary of Labor in late 1991. After the aforementioned discovery abuses, the Secretary moved for its second default judgment in September 1993, and the magistrate judge ordered on October 28, 1993, that a hearing be held. On November 30, 1993, two dancers, on behalf of a class of dancers then dancing at the Old Higgins Inn, filed a petition requesting leave to intervene as of right as party defendants in this action pursuant to Rule 24(a)(2) of the Federal Rules of Civil Procedure. The Secretary opposed the intervention. The magistrate judge recommended the denial of the petition; the district judge agreed and entered the order. The dancers have appealed.
 
 
 18
 We have jurisdiction to entertain the dancers' appeal because we treat the denial of petition to intervene as a matter of right as a final appealable order; it effectively ends the litigation for the petitioner. Brotherhood of R.R. Trainmen v. Baltimore & Ohio R.R. Co., 331 U.S. 519, 524, 67 S.Ct. 1387, 1390, 91 L.Ed. 1646 (1947); Shea v. Angulo, 19 F.3d 343, 344 (7th Cir.1994) (citations omitted). Pursuant to Rule 24(a)(2), a petitioner must meet four criteria to intervene as of right: "(1) timely application; (2) an interest relating to the subject matter of the action; (3) potential impairment, as a practical matter, of that interest by the disposition of the action; and (4) lack of adequate representation of the interest by the existing parties to the action." Shea, 19 F.3d at 346 (citations omitted). The failure to meet any one factor dictates denial of the petition. United States v. City of Chicago, 908 F.2d 197, 199 (7th Cir.1990), cert. denied, 498 U.S. 1067, 111 S.Ct. 783, 112 L.Ed.2d 846 (1991) (citation omitted). The district court determined that the dancers failed to meet the first two criteria. We disagree and hold that the dancers have met each of the four factors and must be permitted to intervene in this dispute.
 
 
 19
 We review the district court's decision on timeliness for an abuse of discretion; we review the other factors de novo. Nissei Sangyo America, Ltd. v. United States, 31 F.3d 435, 438 (7th Cir.1994). In addition, we must accept as true the non-conclusory allegations of the motion. Lake Investors Dev. Group v. Egidi Dev. Group, 715 F.2d 1256, 1258 (7th Cir.1983) (citations omitted). "A motion to intervene as a matter of right, moreover, should not be dismissed unless it appears to a certainty that the intervenor is not entitled to relief under any set of facts which could be proved under the complaint." Id. Finally, we note that intervention cases are highly fact specific and tend to resist comparison to prior cases. Shea, 19 F.3d at 349. With our task appropriately framed, we turn initially to the timeliness of the dancers' petition.
 
 
 20
 The test for timeliness is essentially one of reasonableness: "potential intervenors need to be reasonably diligent in learning of a suit that might affect their rights, and upon so learning they need to act reasonably promptly." Nissei Sangyo, 31 F.3d at 438 (citing United States v. South Bend Community School Corp., 710 F.2d 394, 394 (7th Cir.1983), cert. denied, 466 U.S. 926, 104 S.Ct. 1707, 80 L.Ed.2d 181 (1984)). In making this determination, we must also consider the prejudice to the original parties if intervention is permitted and the prejudice to the intervenor if his motion is denied. See Shea, 19 F.3d at 349 (citing South v. Rowe, 759 F.2d 610, 612 (7th Cir.1985)).
 
 
 21
 The dancers concede that they were informed by ABC of this action possibly as early as April 1992. This translates to a delay of approximately nineteen months in filing the petition to intervene. But we do not necessarily put potential intervenors on the clock at the moment the suit is filed or even at the time they learn of its existence. Rather, we determine timeliness from the time the potential intervenors learn that their interest might be impaired. See United States v. City of Chicago, 870 F.2d 1256, 1263 (7th Cir.1989); Rowe, 759 F.2d at 612. In the City of Chicago case, potential intervenors moved for intervention eight years after a consent decree was entered. In Rowe, a potential intervenor moved to intervene in a case to extend a consent decree that had been in effect for two years. In both cases, we held the petitions for intervention to be timely because they were filed soon after the potential intervenors learned of the impairment of their respective interests.
 
 
 22
 In this case, the magistrate judge ordered a hearing on the Secretary's motion for default judgment on October 28, 1993. The dancers learned of this development soon thereafter and filed their petition on November 30, 1993. The Secretary argues that the dancers should have moved to intervene soon after their discovery of the action. At that time, however, the dancers were assured by ABC that it was vigorously defending their status as independent contractors. ABC's representation, of course, was a lie; not only did ABC fail to defend the dancers' position, it failed to defend itself. The dancers, meanwhile, had no reason to suspect this.
 
 
 23
 We noted in City of Chicago, 870 F.2d at 1263, that we do not expect a party to petition for intervention in instances in which the potential intervenor has no reason to believe its interests are not being properly represented; we went so far as to suggest that the potential intervenor would be laughed out of court. This is precisely the situation the dancers found themselves. They reasonably believed their employer was representing their interests and, considering the believed adequacy of representation, could not have legitimately petitioned to intervene. When they discovered ABC was not adequately representing them, they filed a petition to intervene posthaste. This is all they must do to reasonably comply with the timeliness requirement of Rule 24(a)(2).
 
 
 24
 With respect to prejudice to the parties and the potential intervenors, we believe this also works in the dancers' favor and against the Secretary. He claims that discovery will end soon (roughly August 1995) and to permit intervention now will prolong this matter unbearably. We measure the prejudice to the parties, however, at the time the petition was filed, not now. Had the dancers been permitted to intervene, it is reasonable to conclude that whatever discovery they required could have been completed within the current timeframe. We acknowledge that this is not an ideal situation for the Secretary, but we do not believe the prejudice is so great as to justify denying the dancers' petition. In addition, no party to this appeal claims that ABC will be prejudiced by the dancers' intervention. To the contrary, it is likely that ABC will likely welcome an ally to defend this suit, since it appears from their sluggish efforts that defending this suit is such an onerous task.
 
 
 25
 The prejudice to the dancers, on the other hand, appears to be significant. We will elaborate on this in due course, but suffice it to say that this is their one and only opportunity to define their employment status with ABC. If denied intervention, they will find themselves precluded from bargaining for independent contractor status. In our view, this outweighs any prejudice to the Secretary. We therefore hold that the dancers' petition to intervene was timely filed and that the district court abused its discretion in finding otherwise.
 
 
 26
 Moving on to other factors, the district court also determined that the dancers failed to assert an interest in the subject matter of the action. We require that the potential intervenor's interest be a "direct, significant legally protectable" one. American Nat'l Bank v. City of Chicago, 865 F.2d 144, 146 (7th Cir.1989). The district court held that because an employee may not be named as a defendant in an action brought seeking compliance with a federal labor statute, see Tony and Susan Alamo Found. v. Secretary of Labor, 471 U.S. 290, 105 S.Ct. 1953, 85 L.Ed.2d 278 (1985), the dancers have no interest in the resolution of the case. We think the district court's position frames the inquiry inappropriately.
 
 
 27
 In ascertaining a potential intervenor's interest in a case, our cases focus on the issues to be resolved by the litigation and whether the potential intervenor has an interest in those issues. See, e.g., American Nat'l Bank, 865 F.2d at 147; Wade v. Goldschmidt, 673 F.2d 182, 185 (7th Cir.1982). All concerned here recognize that a core issue in this case is whether the dancers are "employees" under 29 U.S.C. Sec. 203(s)(1)(A). If not (that is, if the dancers are independent contractors), the Act does not apply to ABC. So, the threshold issue in this case is a very narrow one involving a peculiar set of facts applicable only to this employment relationship. The resolution of this issue will define, as a matter of law, the contractual nature of the relationship between the dancers and ABC. This strikes us as quite direct and significant.
 
 
 28
 The dancers' interest in this case is to be distinguished from a mere "betting" interest in the outcome of a case. In such a case, a third party who has some outstanding monetary claim from one of the parties attempts to intervene to ensure that the outcome of the case preserves as much of its claim as possible. Consider Meridian Homes Corp. v. Nicholas W. Prassas & Co., 683 F.2d 201 (7th Cir.1982), as an illustration. In Meridian, 683 F.2d at 204, two brothers were entitled to the profits of a partnership, but were not partners; they sought to intervene in an action regarding the partnership agreement itself. We upheld the district court's denial of the brothers' petition to intervene. Id. We held that while the amount they would receive might be affected by the interpretation of the partnership agreement, they had absolutely no legal interest in the agreement itself. Id.
 
 
 29
 Not so with the dancers. While it is true that the primary manifestation of their interest is likely to relate to their compensation by ABC, there is also a meaningful contractual dimension to their interest. The dancers claim that an adverse ruling on this issue will force ABC to alter its current arrangement with the dancers; indeed it must, for the dancers and ABC will be foreclosed from considering theirs a principal/independent contractor relationship. An adverse ruling, then, will deny the dancers a certain degree of leverage in negotiating their employment conditions with ABC. How those negotiations might play out may appear to some speculative; the weakening of the dancers' negotiating position, however, is all too concrete. After all, a point relied on by the Secretary and the district court is that employees cannot waive the "protection" of the Act, Tony and Susan Alamo Found., 471 U.S. at 302, 105 S.Ct. at 1962; once they are labeled "employees," they are stuck. At least heretofore, the dancers could hold themselves out as independent contractors and arrange with ABC certain conditions designed to benefit both parties.[2] The resolution of the dancers' employment status, therefore, constitutes an interest of the dancers that is direct, significant and legally protectable, and we hold that it meets the interest criterion of Rule 24(a)(2).
 
 
 30
 The district court did not reach the final two factors, but our discussion thus far demonstrates that the dancers have met these as well, and we can dispose of them summarily. To demonstrate the direct and significant nature of the dancers' interest, we described their situation if the district court decided that they were employees rather than independent contractors. The dancers would be deprived of critical leverage in negotiating their conditions of employment, and they (and ABC) would be forced into an employer/employee relationship. The prospect of this unfavorable result meets the impairment prong of Rule 24(a)(2).
 
 
 31
 Finally, we come to the fourth and final requirement: lack of adequate representation. ABC has done as little as possible to defend its own stakes in this action, much less defend the dancers' position. ABC even conceded to default. This meant no one argued on behalf of the position that the dancers are independent contractors. The inadequacy of ABC's representation of the dancers' interest could not be more manifest, and we hold that this prong of Rule 24(a)(2) has also been met.
 
 
 32
 In conclusion, the injunction alleged by the Secretary to have been levied by the district judge violates Rules 58 and 65(d); we therefore dismiss ABC's appeal because we lack jurisdiction to hear it. Also, we hold that the dancers have met the four criteria of Rule 24(a)(2), which compels us to REVERSE and REMAND the district court's denial of their petition to intervene with instructions to permit the dancers to intervene.
 
 
 
 [1]
 That explains why we did not speak in terms of the district judge's error, but abstractly described the alleged injunction as failing to comply with the procedural rules
 
 
 [2]
 The dancers offer as examples of conditions that might be subject to negotiation the number of days per week, number of hours required per shift, rules regarding absenteeism, the dancers' appearance and the proper conduct during dancing, etc