**ADVENT ELECTRONICS, INC.,**
**Plaintiff–Appellee,**

v.

**Bernard A. BUCKMAN and Bernard A. Buckman Enterprises, Inc., formerly known as Finnigan Electronics, Inc., Defendants–Appellants.**

**No. 96–1256.**

United States Court of Appeals,
Seventh Circuit.

Argued May 29, 1996.

Decided April 23, 1997.

Stacey Lee Prange, McBride, Baker &
Coles, Chicago, IL, Sharon R. Barner, Foley

& Lardner, Chicago, IL, Robert M. Kluchin (argued), Meltzer, Purtill & Stelle, Schaumburg, IL, for Plaintiff–Appellee.

Charles E. Antonietti, Julie A. Florek, Antonietti & Associates, Calumet City, IL, James B. Herd, Matthew J. Sauter, Deeba Sauter Herd, St. Louis, MO, for Defendants–Appellants.

Before COFFEY, RIPPLE, and MANION, Circuit Judges.

COFFEY, Circuit Judge.

The Appellants, Bernard A. Buckman and Bernard A. Buckman Enterprises (collectively "Buckman"), appeal from the district court's January 2, 1996 minute order that adopted the preliminary injunction recommendation of the magistrate judge. The preliminary injunction enjoined Buckman from engaging in certain business practices that were in competition with the Appellee, Advent Electronics ("Advent"). The basis for the injunction was Buckman's alleged violation of restrictive covenants contained in agreements between the parties for Advent's purchase of Buckman's electronics business and Buckman's employment by Advent. On appeal, Buckman raises two issues. First, he argues that this court does not have jurisdiction over this appeal because the order entered by the district court on January 2, 1996, was not enforceable due to the district court's failure to comply with Federal Rules of Civil Procedure 58 and 65(d). Rule 58 requires that each judgment be set forth in a separate document and Rule 65(d) dictates

that every order granting an injunction state the reasons for its issuance and the specific terms, without reference to another document. Second, in the event that we have jurisdiction to hear this case, Buckman argues that the injunction is against the manifest weight of the evidence and the district court erred in granting a preliminary injunction that prohibited Buckman from competing with Advent in the manufacture of electronic components. We have jurisdiction over this appeal and remand this case for a more detailed and specific injunction.

## I. BACKGROUND

### A. Facts

Advent is an Illinois corporation with warehouse facilities and sales offices in nine states. Advent provides electronic components and services to original equipment manufacturers. Prior to November 30, 1993, Buckman owned Finnigan Electronics, Inc. ("Finnigan"),[1] a Missouri company that engaged in the business of distributing and manufacturing wire, cable, and other electronic components.

On November 30, 1993, pursuant to an Asset Purchase Agreement, Advent bought substantially all of the assets owned by Finnigan. The agreement contained covenants that restricted Buckman for two years from directly or indirectly engaging in a business that competes with Advent's business and from soliciting orders for products substantially similar to those sold, manufactured, or distributed by Finnigan in its territory.[2] Advent and Buckman also entered into an Em-

---

**1.** After the sale of Finnigan to Advent, Finnigan's name was changed to Bernard A. Buckman Enterprises, Inc., which is solely owned by Appellant Bernard Buckman, in order to "finish out the taxes and all that." (Appellants' App. at 243, Deposition of Buckman, at 6–8.) In January 1995, Appellant Bernard A. Buckman Enterprises began doing business under the name of Buckman Wire and Cable. *Id.*

**2.** The relevant portion of the Asset Purchase Agreement states:

13.1 <u>Noncompete; Confidentiality; Nonsolicitation.</u>
Except as specifically set forth herein or in the Ancillary Agreements, for a period ending two (2) years after the Closing Date, Stockholder [Bernard A. Buckman] and Seller [Finnigan] or

the Stockholder Affiliates shall not, without the prior written consent of Buyer [Advent], engage in a business which competes with the Business, directly or indirectly, personally or as an employee, owner, consultant, manager, associate, partner, agent or otherwise, or by means of any corporate or other device within the states of Missouri, Iowa, Illinois or Nebraska (such geographic area is hereafter referred to as the "Territory"); nor shall Stockholder, Seller or the Stockholder Affiliates for such period and in the Territory solicit orders, directly or indirectly from any customer of Seller or the Buyer, for any product substantially similar to those sold, manufactured or distributed by Seller or the Buyer, personally or as an employee, owner, consultant, manager, associate, partner, agent or otherwise, or by means of any corporate or other device; nor shall Stockholder, Seller or the Stockholder

ployment Agreement contemporaneously with the purchase agreement. Under this agreement, Buckman was made the general manager of the Missouri branch of Advent's operations with various responsibilities, including certain administrative, sales, and marketing duties. The Employment Agreement also restricted Buckman's ability, as an individual, to compete for Advent's customers while employed by Advent and for a period of two years following the termination of the agreement.[3]

In December 1994, Advent terminated Buckman's employment pursuant to the Employment Agreement for the failure of Advent's Missouri branch to achieve the net sales requirement delineated in the agree-

Affiliates for such period and in the Territory solicit for employment any employee of Seller or the Buyer who continued employment with Seller or the Subsidiaries after the Closing Date.
. . . .
Stockholder and Seller acknowledge that the restrictions contained in this Section 13 are reasonable and necessary to protect the legitimate interests of Buyer, do not cause Stockholder and Buyer undue hardship, and that any violations of any provision of this Section 13.1 will result in irreparable injury to Buyer and that, therefore, Buyer shall be entitled to preliminary and permanent injunctive relief in any court of competent jurisdiction and to an equitable accounting of all earnings, profits and other benefits arising from such violation, which rights shall be cumulative and in addition to any other rights or remedies to which Buyer may be entitled. (Appellants' App. at 66–67; Appellee's Br. at 6–7.)

**3.** The salient portion of the Employment Agreement states:

7. <u>No Competing Business.</u> Employee hereby agrees that during the Employment Period and for a period of two (2) years following termination of the Employment Period, regardless of whether this Agreement is terminated for Cause, or as a result of the natural termination of the Employment period, except as permitted by Section 10 of this Agreement, the Employee will not directly or indirectly own, manage, operate, Control, invest or acquire an interest in, or otherwise engage or participate in (whether as a proprietor, partner, stockholder, director, officer, employee, joint venturer, investor, sales representative or other participant in) any Competitive Business in Advent's Market, without regard to (A) whether the Competitive Business has its office or other business facilities within Advent's Market, (B) whether any of the activities of the Employee referred to above itself occurs or is performed within Advent's Market or (C) wheth-

ment. (Appellants' App. at 178–81.) Following his termination, Buckman went into business as a distributor of electronic components, wire, cable, tubing, plastic connectors, and hardware under the name Buckman Wire and Cable Company. (R. 27 at 7; Appellants' App. at 195.) Advent claimed that in so doing, Buckman engaged in activities that were prohibited by the terms of the parties' agreements. Specifically, Advent claimed that Buckman and Buckman Wire and Cable made sales to several of Advent's Missouri customers, including its two largest customers.

**B.** *District Court Proceedings*

As a result of these events, on February 15, 1995, Advent filed its verified amended

er the Employee resides, or reports to an office, within Advent's Market.
8. <u>No Interference with the Business.</u>
(a) <u>Business Relationships.</u> Employee hereby agrees that during the Employment Period, and for a period of two (2) years following the expiration of the Employment Period, except as permitted by Section 10 of this Agreement, Employee will not directly or indirectly solicit, induce or influence any sales representative, supplier, lender, lessor or any other person which has a business relationship with Advent and/or its Affiliates, or which had on the date of this Agreement a business relationship with Advent and/or any of its Affiliates, to discontinue, reduce the extent of, discourage the development of or otherwise harm such relationship with Advent and/or any of its Affiliates.
(b) <u>Customers.</u> Employee hereby agrees that during the Employment Period and during the remaining term as extended pursuant to any extension options of Advent of any contracts between Advent and/or any Affiliate and any customers of Advent and/or any Affiliate, to the extent such contracts extend beyond the Employment Period, that Employee will not directly or indirectly attempt to induce any such customers to terminate such contracts or otherwise divert from Advent and/or any of its Affiliates any trade or business being conducted by such customers with Advent and/or any of its Affiliates pursuant to such contracts; and, during the Employment Period and for two (2) years following the expiration thereof, Employee will not directly or indirectly solicit from, or otherwise agree to provide any services to any customer to which Advent and/or any Affiliate has provided any services during the two years next preceding the termination of the Employment Period, or any party whose identity or potential as a customer was confidential or learned by the Employee during the Employment Period.
(Appellants' App. at 126–27; Appellee's Br. at 89.)

complaint against Buckman for a preliminary injunction prohibiting further violations of the restrictive covenants and for a declaratory judgment that the covenants are valid and enforceable. (R. 2; Appellants' App. at 8.) On March 2, 1995, Advent filed a motion and memorandum in support of a preliminary injunction to restrain Buckman from breaching the Asset Purchase and Employment Agreements. (Appellants' App. at 165 (Motion for Preliminary Injunction); R. 4 (Memorandum in Support).) On March 15, 1995, Buckman counterclaimed for declaratory judgment and damages alleging that the restrictive covenants were unenforceable because they were unlawful and unreasonable restraints on trade. (R. 17.) Buckman also stated that he should be relieved from the burdens of the covenants because Advent breached the Employment Agreement when it took away his administrative functions and hired a different general manager in August 1994. (Id.) Buckman further alleged that he was entitled to back salary, commissions, and bonuses. (Id.) Thereafter, the parties agreed to submit the matter to a magistrate judge on the written submissions and forego an evidentiary hearing. On August 11, 1995, the magistrate judge issued a report and recommendation stating that a preliminary injunction should be issued. (R. 27; Appel-

lants' App. at 189.) Buckman filed timely objections to the magistrate judge's report and recommendation.[4] (R. 30; R. 31; Appellants' App. at 222.) The district court overruled Buckman's objections to the magistrate judge's report and on September 13, 1995, granted Advent's motion for a preliminary injunction in a minute order that only stated, "[d]efendants' objections to Magistrate Judge Guzman's Report and Recommendation of August 11, 1995, are overruled. Accordingly, plaintiff's motion for a preliminary injunction is granted." (R. 35.) Buckman timely appealed the district court's order.

While the appeal was pending, Advent submitted a proposed preliminary injunction to the district court judge, which was also referred to the magistrate judge. The defendant filed objections to this proposed order stating that while the proposed preliminary injunction would restrict Buckman from distributing or warehousing electrical components, it would also improperly restrict Buckman from manufacturing and assembling, two activities not engaged in by Advent.[5] (R. 43 at 6–7.) On November 9, 1995, the magistrate judge overruled Buckman's objections and issued a report recommending that the district court approve Advent's proposed preliminary injunction terms.[6] (R. 47; Ap-

---

**4.** Buckman's objections included that: his termination was a breach of contract; the magistrate judge erroneously determined that Advent had a likelihood of success on the merits; the magistrate judge erroneously balanced the hardships; the recommended injunction was overly broad, oppressive, unenforceable, and lacking in details; and, the report and recommendation failed to recommend an appropriate injunctive bond. (R. 30; R. 31; Appellants' App. at 222.)

**5.** Buckman also requested that the magistrate judge recommend and the district court order Advent to file an injunction bond to cover his anticipated lost income and total legal expenses. Additionally, Buckman argued that the magistrate judge and district court lacked jurisdiction to enter Advent's proposed preliminary injunction because the district court's original order was pending before the Seventh Circuit. (R. 43 at 2.) However, during the pendency of this appeal, we issued an order stating that the preliminary record indicated that we may not have jurisdiction of the appeal because the trial judge's order did not comply with Federal Rules of Civil Procedure 58 and 65(d). (Appellants' App. at 332.) We sent the district court a certified copy of this order. In this order we instruct-

ed the defendant to file a memorandum showing why the appeal should not be dismissed for lack of jurisdiction and stated that a motion for voluntary dismissal pursuant to Federal Rule of Appellate Procedure 42(b) will satisfy this requirement. In response, the defendant voluntarily dismissed the appeal.

**6.** The report and recommendation lists the terms of the injunction as follows:

Defendants, and each of them, are hereby enjoined during the pendency of this action from:

(a) Engaging in a business which competes with the business of Plaintiff Advent directly or indirectly, personally or as an employee, owner, consultant, manager, associate, partner, agent or otherwise, or by means of any corporate or other device within the states of Missouri, Iowa, Illinois, Nebraska, Minnesota, Wisconsin, Michigan or Indiana (such geographic area is hereafter referred to as the "Territory");

(b) Soliciting orders in the Territory directly or indirectly from any customer of Advent or of Finnigan for any product substantially similar to those sold, manufactured or distributed by Advent, personally or as an employee, owner, con-

pellants' App. at 333.) The magistrate judge found that Advent had shown a substantial likelihood of success in establishing that the terms in the agreements were not overly broad or oppressive. The judge further stated, that "the proposed injunctive order merely prohibits defendant from doing those things which it agreed it would not do in the covenants of the Asset Purchase Agreement and the Employment Agreement." (R. 47; Appellants' App. at 336–37.)

On November 17, 1995, Buckman filed objections to the magistrate judge's report, which specifically asserted that the proposed preliminary injunction's inclusion of a restriction on manufacturing made the proposal overly broad, oppressive, and unnecessary to protect Advent's legitimate business interests. (R. 51; Appellants' App. at 341.) On January 2, 1996, the district court judge overruled Buckman's objections and entered the preliminary injunction recommended by the magistrate judge. This entry was in the form of a minute order that failed to spell out the terms of the injunction and merely stated, "[t]he Court adopts Magistrate Judge Guzman's Report and Recommendation ... and enters the preliminary injunction order as recommended...." (R. 54.) No separate Rule 58 judgment was issued.

On February 1, 1996, Buckman filed a timely notice of appeal. On appeal Buckman argues that the appeal should be dismissed for lack of jurisdiction, or in the event we find jurisdiction, the district court order should be reversed because it granted a preliminary injunction that was too broad.[7]

## II. DISCUSSION

### A. *Jurisdiction*

■ The first issue that Buckman raises on appeal is somewhat unusual in that he asks this court to dismiss his own appeal for lack of jurisdiction. Such a finding would effectively render the preliminary injunction issued by the district court null and void. Buckman argues that we lack jurisdiction over this appeal because the district court order granting the injunction failed to comply with Federal Rules of Civil Procedure 58 and 65(d). Rule 58 requires that "[e]very judgment shall be set forth on a separate document." Rule 65(d) states that "[e]very order granting an injunction ... shall set forth the reasons for its issuance; shall be specific in terms; [and] shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained...."

In this case the district court failed to set forth a separate Rule 58 judgment and stated the terms of the injunction by reference to another document, the magistrate judge's report and recommendation. However, we still determine that we have jurisdiction to hear this appeal.

■ "A violation of Rule 58 is not necessarily jurisdictional." *Reich v. ABC/York–Estes Corp.*, 64 F.3d 316, 319 (7th Cir.1995). Rule 58 is jurisdictional in the sense that it determines the point at which the time for an appeal begins to run, however it is not to be so rigidly enforced that the parties may not waive it. *Bankers Trust Co. v. Mallis*, 435 U.S. 381, 384, 98 S.Ct. 1117, 1119–20, 55

sultant, manager, associate, partner, agent or otherwise, or by means of any corporate or other device;

(c) Directly or indirectly soliciting, inducing or influencing any sales representative, supplier, lender, lessor or any other person which had a business relationship with Advent during the time Defendant Buckman was employed by Advent, to discontinue, reduce the extent of, discourage the development of or otherwise harm such relationship with Advent:

(d) Directly or indirectly attempting to induce any customers of Advent's Missouri Branch to terminate any contracts with Advent or otherwise with Advent or otherwise divert from Advent any trade business being conducted by such customers with Advent pursuant to such contracts; and

(e) Directly or indirectly soliciting from, or otherwise agreeing to provide any services to any customer to which Advent has provided any services while Defendant Buckman was employed by Advent.

(f) Directly or indirectly disclosing to anyone or using or otherwise exploiting for their own benefit or the benefit of anyone other than Advent, any confidential customer information belonging to Advent.

(R. 47 at 5–6; Appellants' App. at 337–38.)

7. On appeal, Buckman does not raise the issues from the counterclaim for the alleged breach of contract by Advent and Buckman's entitlement to lost wages, commissions, and bonuses.

L.Ed.2d 357 (1978) (per curiam). "The entry of a Rule 58 judgment is not a prerequisite to finality; it is merely evidence that the district court is done with the case, making its decision final and therefore appealable under 28 U.S.C. § 1291 ('final decisions')." *Richmond v. Chater*, 94 F.3d 263, 266 (7th Cir. 1996) (citing *Bankers Trust Co. v. Mallis*, 435 U.S. 381, 98 S.Ct. 1117, 55 L.Ed.2d 357 (1978)).

In *Reich* we held that when there is a more than technical and obvious violation of Rule 58 there can be no valid injunction. *Reich*, 64 F.3d at 319–20. However, two months prior to that decision, in *Metzl v. Leininger*, we decided that when it is plain as to what a declaratory judgment declares and it is clear that the district court is finished with the case, then even if Rule 58 has not been complied with, there is appellate jurisdiction. 57 F.3d 618, 619–20 (7th Cir.1995). In both *Metzl* and *Reich* there were violations of both Rules 58 and 65(d), but these two cases seem to compel different results. However, the instant case can be distinguished from *Reich*. In *Reich* there was a serious violation of 65(d) because the injunction referred solely to the complaint, a practice that is clearly prohibited. *Reich*, 64 F.3d at 320. Additionally, the party to be enjoined in *Reich* was not only completely in the dark regarding what conduct might have been enjoined, it also had no idea whether an injunction had even been entered. *Id.* "The acid test of whether a purported injunction is appealable is whether it is in sufficient though not exact compliance with Rule 65(d) that a violation could be punished by contempt or some other sanction." *Original Great American Chocolate Chip Cookie Co., Inc. v. River Valley Cookies, Ltd.*, 970 F.2d 273, 276 (7th Cir.1992).

In this case, unlike in *Reich*, both parties were aware of the terms of the injunction which were specified in the magistrate judge's Report and Recommendation of November 9, 1995, which the district court referred to and adopted. This awareness was evidenced by Buckman filing objections to the magistrate judge's report and recommendation which acknowledged the terms and argued over the precise wording of the proposed preliminary injunction. (R. 51; Appellants' App. at 341.) Further, on appeal Buckman continues to illustrate his awareness by asserting that the injunction terms are too broad.

The facts in this case are analogous to those in *Chicago & North Western Transp. Co. v. Railway Labor Executives' Ass'n*, 908 F.2d 144 (7th Cir.1990), where the district court granted a permanent injunction without specifying the terms as required by Rule 65(d). We found that the injunction was valid because the terms had previously been explicitly set forth in the preliminary injunction. In Chicago & North Western Transp., we held that the parties were obviously aware of the terms of the injunction and to find that there was no injunction would exalt form over substance. Therefore, in this case we determine that the violation of Rule 65(d) is of a technical, rather than substantial, nature and we accordingly have jurisdiction to hear this appeal.

## B. Scope of Preliminary Injunction

 Having determined that we have jurisdiction, we now turn to the issue of whether the district court erred in granting a preliminary injunction that among other restrictions, prohibited Buckman from competing with Advent in the manufacture of electronic components.[8] Buckman asserts that the restriction on manufacturing is excessive and unnecessary because Advent has repeatedly admitted that it is not a manufacturer. (R. 2, Advent's Verified Amended Complaint at 3; R. 25, Ex. 2, Declaration of Victor R. Blair

---

**8.** There are also several pending motions before this court. Advent filed two motions to supplement the record on appeal to include contempt pleadings, and the magistrate judge's report and district court judge's order finding Buckman in contempt of the preliminary injunction. Buckman filed a motion to strike the portions of Appellee's brief and supplemental appendix that reference pleadings, deposition testimony, and events that transpired after the issuance of the district court's minute order which is the subject of this appeal. As our decision has not relied upon any of the materials pertaining to the contempt proceedings contained in Advent's brief, supplemental appendix, or the material in its motion to supplement the record on appeal, we grant Buckman's motion and deny Advent's motions.

at para. 2 (declaration of sole shareholder, president, and CEO of Advent stating "Advent is not a manufacturer"); R. 27, Report and Recommendation of Aug. 11, 1995 at 2.)

■ A district court has broad discretion to issue or deny a preliminary injunction. *Hoosier Penn Oil Co. v. Ashland Oil Co.*, 934 F.2d 882, 884–85 (7th Cir.1991). When the district court grants a preliminary injunction we review conclusions of law de novo and findings of fact under a clearly erroneous standard, while at the same time, we give substantial deference to the district court's discretionary acts of weighing evidence or balancing equitable factors. *Stewart v. Taylor*, 104 F.3d 965, 970 (7th Cir.1997).

The magistrate judge's Report and Recommendation of November 9, 1995, which the district court adopted, stated that Buckman is enjoined from "[s]oliciting orders in the Territory directly or indirectly from any customer of Advent or Finnigan for any product substantially similar to those sold, manufactured or distributed by Advent...." (R. 47 at 5 (emphasis added); Appellants' App. at 337.) In rejecting Buckman's objection that the injunction was too broad by its inclusion of a restriction on manufacturing, the district court relied exclusively on the agreements between the parties. The magistrate judge's report states that "the proposed injunctive order merely prohibits defendant from doing those things which it agreed it would not do in the covenants of the Asset Purchase Agreement and the Employment Agreement." (R. 47 at 4–5; Appellants' App. at 336–37.)

■ In determining whether to enter a preliminary injunction, a district court should consider: whether there is a reasonable likelihood that plaintiff will prevail at trial; whether the plaintiff has an adequate remedy at law or will be irreparably harmed if the injunction is not issued; whether the threatened injury to the plaintiff outweighs the threatened harm the injunction may inflict on the defendant; and whether the granting of the preliminary injunction will disserve the public interest. *PepsiCo, Inc. v. Redmond*, 54 F.3d 1262, 1267 (7th Cir.1995); *American Hosp. Supply Corp. v. Hospital Products Ltd.*, 780 F.2d 589, 593–94 (7th Cir.1986). Under Illinois law, which the parties implicitly agree covers the present diversity action, non-competition clauses are disfavored. *Sarnoff v. American Home Products Corp.*, 607 F.Supp. 77, 79 (N.D.Ill.1985), *aff'd and rev'd in part on other grounds*, 798 F.2d 1075 (7th Cir.1986). A court will only enforce provisions which are "reasonably necessary to protect a legitimate business interest or to prevent improper and unfair competition." *Rao v. Rao*, 718 F.2d 219, 223 (7th Cir.1983).

■ The district court's order, adopting the magistrate judge's Report and Recommendation of November 9, 1995, failed to adequately consider the proper scope of the injunction under the governing law.[9] It is improper under Illinois law to enforce a non-competition clause merely because the parties agreed to such an arrangement. The district court should have determined whether Advent had a legitimate business interest that would be protected by enjoining Buckman from engaging in the conduct proscribed by the preliminary injunction. Therefore, the district court order is vacated and remanded for renewed consideration under the proper legal standards. *Abbott Laboratories v. Mead Johnson & Co.*, 971 F.2d 6, 22 (7th Cir.1992). We emphasize that we do not give an opinion on whether the preliminary injunction reached by the district court was an incorrect result. We merely state that we are unable to review its determination without further specific findings. The district court may, in its discretion, find that a more extensive hearing is required before it determines what type of more specific injunction is appropriate.

**9.** The magistrate judge's first report and recommendation, dated August 11, 1995, stated "that the good will transferred from seller to buyer is a legitimate business interest subject to protection by restrictive covenants." (R. 27 at 15, 27–29; Appellants' App. at 203, 215–17.) However, this analysis was not given in the district court decision being appealed or in the magistrate judge's second report and recommendation, which the district court adopted. Only the second report and recommendation listed the specific terms of the injunction including the restriction on manufacturing.

### III. CONCLUSION

The district court order granting the preliminary injunction is VACATED and REMANDED for further proceedings consistent with this opinion. Pursuant to Circuit Rule 36, we consider it appropriate for this case to be reassigned to another judge on remand.