BEAR, STEARNS & CO., INC.,
a New York corporation,
Plaintiff–Appellee,

v.

James R. SITLINGTON, III, Defendant,

Appeal of: Carol G. SITLINGTON,
Proposed Intervenor.

No. 00–4056.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 20, 2001.

Decided Oct. 11, 2001.

Rehearing and Rehearing En Banc
Denied Nov. 14, 2001.

Before BAUER, MANION, EVANS,
Circuit Judges.

ORDER

In this diversity case, Carol Sitlington appeals from the denial of her emergency motion to intervene and her motion for modification of a turnover order issued against certain assets in which she claims to have an interest.

Carol Sitlington's husband, James Robert Sitlington III, was a broker for Bear Stearns. After the firm learned that he converted $1.75 million from its customers, it filed the present civil case against Sitlington based on this conversion. In the early stages of the case, Mrs. Sitlington was allowed to intervene on certain issues because she enjoyed joint ownership of the couple's real property, which was about to be used to satisfy the judgment. Bear Stearns and Mr. and Mrs. Sitlington eventually agreed to entry of a $1,365,785.30 judgment which resolved all but one count of the complaint. Later, that count was resolved and an additional $500,000 judgment was entered. By stipulation, a Citibank account was delivered to Bear Stearns, and a constructive trust was imposed on a property in Colorado and on the Sitlingtons' Glen Ellyn, Illinois, residence. The judgment was nevertheless not completely satisfied, and in March

1999 Bear Stearns filed a motion for an order relating to James' shares of restricted Lehman Brothers stock units (RSU), which were scheduled to mature on July 1, 2000. Bear Stearns sought to enjoin Lehman Brothers from disbursing the RSUs. The injunction was entered on March 24, 1999, and was based on the $1.3 million judgment.

Meanwhile, in a criminal action, James began serving a 44–month sentence arising out of his nefarious conduct. As part of his sentence he was ordered to make restitution to Bear Stearns to the tune of $1,750,000.

After the RSUs vested on July 1, Bear Stearns filed a motion for a turnover order. At a hearing on the motion in September 2000, the court granted the motion.

Mrs. Sitlington filed her emergency motion to intervene on October 19, arguing that she had a legally protectable inchoate interest in the stock as a result of her filing a petition for legal separation in Colorado on August 11, 2000. Her motion was denied and she appeals.

In order to intervene as of right, Mrs. Sitlington must show that she made a timely application, had an interest relating to the subject matter of the action, had a potential impairment in that interest, and was not adequately represented by the existing parties. The failure to satisfy any one of the factors dooms her intervention. *Reich v. ABC/York–Estes Corp.,* 64 F.3d 316 (7th Cir.1995). Although Mrs. Sitlington also claimed a right to permissive intervention, she does not pursue that claim on appeal, so our consideration is of her claim that she had an interest in the subject matter of the action. An interest is a "direct, significant, legally protectable" one. *American Nat'l Bank v. City of Chicago,* 865 F.2d 144, 146 (7th Cir.1989). Furthermore, "[i]t is something more than a mere 'betting' interest ... but less than

a property right." *Security Ins. Co. of Hartford v. Schipporeit, Inc.,* 69 F.3d 1377, 1380–81 (7th Cir.1995). Our review of the district court's order is *de novo. Reich.*

Mrs. Sitlington contends that her petition for a legal separation in August 2000 gives her an interest in the RSUs and therefore the turnover order in September 2000 was granted in error. She says that in Colorado all property acquired by either spouse during marriage is presumed to be marital property. Furthermore, she argues that Bear Stearns was required to file a citation to discover assets under Illinois law, rather than a motion in the district court, in order to obtain rights in the RSUs. Bear Stearns claims that even under Colorado law its judgment lien takes priority. It claims a perfected judgment lien on the Lehman Brothers stock because of the unsatisfied judgment in this case. That lien existed at the time of the order enjoining disbursement of the units on March 24, 1999. Bear Stearns contends that a citation to discover assets is not the only way to assert its right to the property.

It is true, as Mrs. Sitlington argues, that Rule 69 of the Federal Rules of Civil Procedure says that enforcement of a judgment is accomplished in accordance with state law. Illinois, whose law applies here, provides a procedure in 735 ILCS 5/2–1402 under which a judgment creditor can serve a citation to discover assets. The statute provides just what it says—a way to find assets with which to satisfy a judgment. The district court in this instance, however, saw that there was no need to "discover" the assets; everyone knew perfectly well where they were.

And, as for preserving those assets, in the stipulation for the entry of judgment in this case, all parties, including Mrs. Sitlington, agreed to a money judgment in

favor of Bear Stearns in the amount of $1,365,785.30. The stipulation provided for the immediate recording of a judgment lien for the entire amount. Furthermore, the stipulation provided that "the Court shall retain jurisdiction over Bear Stearns and the Sitlington Parties for issues arising out of the enforcement of the Settlement and the Judgment." As we said, Mrs. Sitlington agreed to the entry of the judgment.[1]

Given this stipulation, it is not surprising that Bear Stearns went back to the district court seeking an order to stop Lehman Brothers from disbursing the RSUs upon their maturity in July 2000 and, after the RSUs matured, seeking a turnover order which, as we said, was granted in September 2000.

It was after this that Mrs. Sitlington attempted to intervene, claiming that she had a protectable interest in the property. Her alleged interest grows out of her filing for legal separation in Colorado, in which state, she argues, her interest vests upon the filing of the petition. On that point, she is right. Under the Colorado statutes, a filing of a proceeding for dissolution of a marriage or for legal separation vests marital property rights. Both parties are restrained "from transferring, encumbering, concealing, or in any way disposing of . . . any marital property." C.R.S. 14–10–107(4)(b)(I)(A). However, there is more to the story. Previous liens on property take priority over marital property rights which are akin to unrecorded equitable interests in the property: "A judgment lien creditor has priority over a person who holds an unrecorded equitable interest in the property." *Shearton Serv. Corp. v. C.B. Johnson and Carol Jean Johnson, Intervener,* 5 P.3d 395, 397 (Colo.App.2000). The Colorado Supreme Court has referred to the rights as "inchoate." *In re Questions Submitted by the United States District Court,* 184 Colo. 1, 517 P.2d 1331, 1335 (Colo. 1974). In *Shearton,* the court also said "the filing of a dissolution action does not give a debtor's spouse any rights that predate the attachment of a judgment lien creditor's rights." At 397. Accordingly, Mrs. Sitlington does not have an interest in the property, and her request to intervene in this action was properly denied.

Based on the foregoing discussion, we also see no reason to disturb the turnover order, which is reviewed only for an abuse of discretion. We would disturb the order only if the record contained no evidence upon which to make the decision, if the decision were based on an erroneous con-

---

1. In addition, Mrs. Sitlington made further concessions regarding the property. In imposing sentence in the criminal case, the judge considered Mr. Sitlington's sentencing memorandum which said that, as part of a civil settlement, he gave up his family home, a second property, and his interest in over 5,000 shares of restricted stock. He also said that Bear Stearns had a lien on 5,680 units of restricted stock that he owned in Lehman Brothers. Mrs. Sitlington submitted a letter, dated January 30, 2000, in support of the sentencing memorandum in which she said that her husband had "relinquish[ed] all of his property, positions and licensure to pay retribution for mistakes made." She made no claim to any of the property. In reaching our decision today, we are not considering these facts except to note that there was concern in the district court that the proceeding for legal separation and the filing of the request to intervene showed collusion between Mr. and Mrs. Sitlington in an attempt to preserve the property. *See* transcript of October 20, 2000, proceeding, at 17–18. We do not rely on these facts because Bear Stearns' request that we take judicial notice of the documents has previously been denied. Similarly, another fact not in the record is that the stipulated judgment in this case was recorded with the recorder of deeds in San Miguel County, Colorado, on March 30, 1999. Given the probative nature of these facts, we would be happier had a better record been made in the district court.

clusion of law, if the factual findings were clearly erroneous, or if the decision was arbitrary. *Divane v.. Krull Elec. Co.,* 194 F.3d 845 (7th Cir.1999). Nothing of the kind is present here. Accordingly, the decision of the district court is AFFIRMED.