NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted September 21, 2018[*]
Decided January 2, 2019

**Before**

MICHAEL S. KANNE, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 18-2862

| | |
|---|---|
| IN RE: EMERALD CASINO, Inc. *Debtor*, | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| FRANCES GECKER, as Trustee for Emerald Casino, Inc., *Plaintiff-Appellee*, | No. 11 C 4714 |
| *v.* | Rebecca R. Pallmeyer, *Judge.* |
| ESTATE OF KEVIN FLYNN, *et al.*, *Defendants-Appellees.* | |
| Appeal of DONALD F. FLYNN, SHANNON E. FLYNN, and BRENDAN E. FLYNN, *Intervenors-Appellants.* | |

---

[*] After examining the briefs and record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and record. *See* FED. R. APP. P. 34(a)(2).

**O R D E R**

After the Illinois Gaming Board revoked Emerald Casino's gaming license, the company filed for bankruptcy. The bankruptcy trustee initiated an adversary proceeding against several former Emerald officers, directors, and shareholders for breach of contract and breach of fiduciary duties. The district court found four of those defendants severally liable, including the estate of Kevin Flynn. The defendants appealed. In May 2016, while that appeal was pending, the bankruptcy trustee served citations to discover assets on Susan Flynn (Kevin Flynn's widow) and others.

Those citations were necessary, in part, because the Flynns' financial holdings are complex. Before we detail some of those holdings, we note that the parties fiercely dispute many aspects of the structure and legal effect of the trusts. In summarizing the trusts at issue, we offer no opinion regarding their legality or enforceability.

Among other assets, the bankruptcy trustee sought information regarding an appointive trust for which Susan served as trustee. Kevin created and funded the Appointive Trust via two other trusts. In 1992, Kevin's father, Donald Flynn, created an irrevocable trust (with a spendthrift provision) which designated Kevin as the trustee and initial primary beneficiary. The 1992 trust granted Kevin limited testamentary power of appointment. In 1995, Kevin created a revocable trust, designating himself as the sole trustee and beneficiary.

Kevin's will directed that the residue of his estate, including the assets in the 1992 trust, be distributed to the trustee of the 1995 trust and then administered as that document directed. After Kevin's death, and pursuant to the terms of the 1995 trust, "approximately $90 million was transferred from the 1992 Trust" to an appointive trust. (Appellant's Br. at 9.) The terms of the Appointive Trust directed Susan, the trustee, to distribute the income and principal as necessary for the health, support, and education of herself and her four children.

Susan moved to dismiss the citations. On December 2, 2016, the district court denied that motion and ordered the movants to comply with the requested discovery. In its decision, the district court emphasized that it was "not ordering the transfer of any assets." (R. 516 at 13.) Rather, with respect to the Appointive Trust, the court simply intended its ruling to "permit[] the Trustee to … determine whether the Appointive Trust contains only uncollectable assets." (*Id.*)

After the district court's ruling, the bankruptcy trustee commenced the laborious process of filing supplemental citations and compelling complete discovery. On August 11, 2017, while the discovery process continued, we held that the defendants were jointly and severally liable (instead of just severally liable) but affirmed on all other grounds. Following that appeal, the judgment against the Estate totaled approximately $220 million. In October 2017 and February 2018, the district court ordered Susan to produce responsive documents. The third round of document production ended in June 2018. On June 4, 2018, the bankruptcy trustee filed a motion to compel turnover of the assets in the Appointive Trust. The district court set trial for January 7, 2019, and froze the Appointive Trust.

Susan's adult children, Donald, Shannon, and Brendan Flynn, moved to intervene on July 30, 2018. They argued that the Turnover Motion threatened their interests because, if granted, the Appointive Trust would lack assets to support them and because their mother was not adequately representing their interests. The district court denied the motion after holding a hearing on August 2, 2018. The hearing transcript reveals that the district court denied the motion for two reasons. First, the district court concluded that the children filed the motion at their mother's request. (R. 805 at 10 ("It sounds like, from the testimony [of Shannon Flynn], that it was her mother's idea.")). Second, the district court wondered "why didn't the children jump into this months ago?" (*Id.* at 12.) When counsel for the children suggested that the children were unaware of their interests until June 2018, the court summarily denied intervention. The intervenors appealed several weeks later.

"Rule 24 provides two avenues for intervention, either of which must be pursued by a timely motion." *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 798 (7th Cir. 2013). We consider four factors in determining whether a motion is timely: "(1) the length of time the intervenor knew or should have known of his interest in the case; (2) the prejudice caused to the original parties by the delay; (3) the prejudice to the intervenor if the motion is denied; (4) any other unusual circumstances." *Sokaogon Chippewa Cmty. v. Babbitt*, 214 F.3d 941, 949 (7th Cir. 2000). "We review the district court's decision on timeliness for an abuse of discretion." *Reich v. ABC/York-Estes Corp.*, 64 F.3d 316, 321 (7th Cir. 1995).

The initial question is when the Flynn children knew or should have known of their interest in this supplemental proceeding. They argue that the bankruptcy trustee's exploratory efforts to evaluate potential assets did not necessitate intervention. Rather, the movants contend that the threat to their interests did not materialize until the

bankruptcy trustee filed the Turnover Motion. But our cases articulate a different standard for measuring timeliness. "We determine timeliness from the time the potential intervenors learn that their interest *might* be impaired." *Reich*, 64 F.3d at 321 (emphasis added); *see also Heartwood, Inc. v. U.S. Forest Serv., Inc.*, 316 F.3d 694, 701 (7th Cir. 2003) (same). When a putative intervenor learns of an interest in a case but decides against intervention, they run the risk of an adverse outcome down the road. *See Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 798 (7th Cir. 2013) (affirming the denial of a motion to intervene as untimely because the movant knew the district court granted discovery on the defense but did not move to intervene until after the court granted summary judgment); *Sokaogon Chippewa Cmty. v. Babbitt*, 214 F.3d 941, 949 (7th Cir. 2000) ("If the [intervenor] wanted a voice in the litigation, it should have asked the district court to allow it to intervene much sooner."). The intervenors took that risk here. The May 2016 citations and district court's December 2016 order both made clear that the bankruptcy trustee intended to seek turnover of the assets in the Appointive Trust. Given their manifest interest in the Appointive Trust assets and their mother's extensive involvement in the supplemental bankruptcy proceedings, the movants should have known of their interest from at least December 2016.

The next two considerations involve the prejudice to the existing parties and proposed intervenors. The bankruptcy trustee argues that intervention would prejudice it because the time for discovery has passed and trial is imminent. While the bankruptcy trustee received an opportunity to depose some of the intervenors during discovery, the scope of questioning would likely have been broader if they had been parties. And intervention would likely require an adjournment of trial, especially if the court reopens discovery.

The movants argue that the district court's order will prejudice them because they will be unable to raise a contingent counterclaim and defense. Specifically, if the bankruptcy trustee succeeds in arguing "that the transfer of assets from the 1992 Trust to the Appointive Trust made those assets subject to creditors," then the intervenors will argue that "the transfer was void under the provisions of the 1992 Trust and, as a result, the assets should revert back to the 1992 Trust." (Appellant's Br. at 38.) Susan is not a beneficiary of the 1992 Trust. For that reason, the movants assume that Susan cannot raise this argument herself, but that assumption is unsupported. First, Susan has, in fact, already raised that argument. (*See* R. 785 at ¶ 30.) Second, Susan and her children share the "same ultimate objective." *Meridian Homes Corp. v. Nicholas W. Prassas & Co.*, 683 F.2d 201, 205 (7th Cir. 1982). They wish to maintain the assets in the Appointive Trust, and if not in the Appointive Trust then within the family. Finally, to

the extent there is a question regarding whether Susan possesses standing to make this argument, that issue is presently unresolved. The bankruptcy trustee believes Susan *does* have standing (because she is the legal guardian of her fourth, minor, child) and the district court has not opined on this issue. The intervenors' assertion of prejudice is thus theoretical. *See Southmark Corp. v. Cagan*, 950 F.2d 416, 418 (7th Cir. 1991) ("[T]he court below has not yet decided that [the defendant] has no standing to pursue these claims, and it is premature to assume that it will do so."). At present, the bankruptcy trustee would suffer more prejudice from intervention than the movants will suffer from denial of intervention.

Finally, the district court was within its discretion to conclude that there were unusual circumstances which supported denial of the motion. The request for intervention came several years into protracted and contentious bankruptcy proceedings. The intervenors admitted that they moved to intervene at their mother's suggestion. (R. 805 at 5.) In fact, the motion to intervene came six weeks after the district court found that another of Kevin Flynn's asset transfers—this one to Susan directly— was constructively fraudulent. *See In re Emerald Casino, Inc.*, No. 11 C 4714, 2018 WL 2967020 (N.D. Ill. June 13, 2018). Against this factual backdrop, the district court could have reasonably concluded that the motion to intervene represented an attempt to delay and obstruct proceedings, not a good-faith attempt to vindicate unrepresented interests.

Because the motion to intervene was untimely, the district court did not abuse its discretion by denying it. AFFIRMED.