## In re DISCOVERY ZONE SECURITIES LITIGATION.

### No. 94 C 7089.

United States District Court,
N.D. Illinois,
Eastern Division.

Sept. 3, 1998.

Marvin Alan Miller, Kenneth A. Wexler, Miller, Faucher, Cafferty and Wexler, L.L.P., Chicago, IL, Steven Popuch, Swift, Popuch & Sinclair, Chicago, IL, Mark C. Gardy, Abbey, Gardy & Squitieri, LLP, New York City, Robert P. Sugarman, Milberg, Weiss, Bershad, Hynes & Lerach LLP, New York City, Robert M. Roseman, Spector & Roseman, P.C., Philadelphia, PA, Michael David Craig, Schiffrin, Craig and Barroway, Buffalo Grove, IL, for plaintiffs.

John P. Scotellaro, Maureen W. Kirby, Peter G. Rush, Amy Lamar Ostrander, Bell, Boyd & Lloyd, Chicago, IL, for Robert D. Mitchum, Victor R. Casini, Gerald E. Seegers, John T. McCarthy, and Donald F. Flynn, defendants.

John P. Scotellaro, Maureen W. Kirby, Peter G. Rush, Amy Lamar Ostrander, Bell, Boyd & Lloyd, Chicago, IL, Aaron R. Marcu, Howard, Darby & Levin, New York City, for Discovery Zone, defendant.

Stephen J. Bisgeier, Miller, Shakman, Hamilton, Kurtzon & Shlifke, Chicago, IL, Kenneth A. Wexler, Miller, Faucher, Cafferty and Wexler, L.L.P., Chicago, IL, David W. Haller, J. Jay Lobell, Aaron R. Marcu, Howard, Darby & Levin, New York City, for McDonald's Corporation, proposed.

## MEMORANDUM OPINION AND ORDER

CASTILLO, District Judge.

Now approaching its fourth anniversary, this federal securities fraud class action comes before us for decision on a third critical motion.[1] Our two earlier opinions granted in part and denied in part the individual defendants' motion to dismiss the plaintiffs' 1934 Securities Exchange Act claims and certified a modified class of Discovery Zone ("DZ") common stock purchasers. We must now decide whether, on the eve of settlement and after three years of contentious litigation and the considerable investment of judicial resources, McDonald's Corporation should be allowed to intervene in this case.

### BACKGROUND [2]

#### I. Procedural History

In November 1995, the plaintiffs superceded their earlier pleadings by filing a Second

---

1. This suit was filed on November 28, 1994, and originally named Discovery Zone and several high-level executives and directors as defendants. Only five individual defendants remain, however; two were dropped from the complaint, and the Court dismissed all claims against Discovery Zone without prejudice on March 26, 1996 as a result of its bankruptcy filing.

2. The allegations driving this lawsuit were reviewed extensively in our opinion on the defendants' motion to dismiss. *See In re Discovery*

Consolidated Amended Class Action Complaint ("SACAC"), the subject of this Court's two earlier opinions. The SACAC claimed that DZ and several of its senior officials perpetrated a fraud on the market and the investing public by misstating DZ's corporate earnings, violating generally accepted accounting principles ("GAAP"), misrepresenting the financial effects of a major acquisition, and heralding untenable predictions of growth and prosperity. The earnings and GAAP claims centered on DZ's 1993 Annual Report and first two 1994 quarterly reports, which allegedly vastly overstated earnings through accounting artifice. On the heels of these alleged misstatements, while DZ's share price remained artificially high, the defendants unloaded their shares. Only then, with profits safely in hand, did the defendants allegedly began to reveal the true, financially beleaguered state of the company, driving down the share price and leaving the plaintiff shareholders with drastically devalued stock. The plaintiffs claimed that this conduct violated sections 10(a) and 20(a) of the 1934 Securities Exchange Act and SEC Rule 10b–5.

This Court's concurrently issued September 1996 decisions left intact the federal securities fraud claims of all persons who purchased DZ's common stock between February 17, 1994 and January 17, 1995. Instrumental to shaping the class period was our ruling that it must end on the date that the latest purchasing representative bought DZ stock. *See In re Discovery Zone Sec. Litig.*, 169 F.R.D. 104, 112 (N.D.Ill.1996) (*Discovery Zone II*). We reasoned that we were bound by the decision in *Roots Partnership v. Lands' End, Inc.*, 965 F.2d 1411 (7th Cir.1992), which held that a class representative cannot represent the interests of later purchasers in a fraud-on-the-market case.[3] Because the latest purchasing class representative was Ber-

nard Weisberg, we ended the class period on his purchase date, January 17, 1995. Our decision was complicated, however, by the fact that Weisberg and another proposed representative's interests conflicted with the other class members'. We dismissed these two representatives and gave the plaintiffs sixty days to replace them with appropriate substitutes.

Following these opinions, the parties began conducting discovery. The plaintiffs also tried to preserve the class period by tendering two new representatives in November 1996. One proposed representative, however, was voluntarily withdrawn in February 1997, and on May 27, 1997, the Court granted the defendants' motion to dismiss the other proffered representative. Consistent with these developments and our rulings in *Discovery Zone I and Discovery Zone II*, we adjusted the class period to end on the date of the latest remaining representative's purchase. This translated to July 19, 1994, the day named plaintiff Robert Kahn bought his DZ shares. The plaintiffs attempted to restore the class period by filing a motion to add more representatives on August 7, 1997. But before the Court had a chance to rule on this motion, the parties reached a settlement. On September 9, 1997, we dismissed this action without prejudice upon final approval of the proposed settlement. One month later (but before the parties submitted papers for preliminary settlement approval) McDonald's Corporation moved to intervene.

## II. McDonald's Role

McDonald's describes itself as DZ's largest shareholder, having acquired 5.5 million DZ shares through a merger agreement in 1994. Stripped to its basics, the merger agreement provided for DZ to acquire a McDonald's subsidiary, Leaps & Bounds, Inc., in exchange for DZ common stock.[4] McDonald's

---

*Zone Sec. Litig.*, 943 F.Supp. 924, 927–34 (N.D.Ill.1996) (*Discovery Zone I*). They resurface here only to the extent necessary to resolve the intervention question. These allegations, as well as the non-conclusory allegations in McDonald's motion to intervene, must be accepted as true in this opinion. *See Reich v. ABC/York–Estes Corporation*, 64 F.3d 316, 321 (7th Cir. 1995).

**3.** Our *Discovery Zone I* decision explains the fraud-on-the-market theory and elaborates on the applicability of *Roots Partnership*. *See* 943 F.Supp. at 934 n. 6, 944.

**4.** A July 18, 1994 letter of intent provided that the quantity of shares exchanged depended in part on the average market price of DZ shares

and DZ first signed a letter of intent to this effect on July 18, 1994, but the letter explicitly stated that none of its provisions (save the no shop and press release paragraphs) were binding; rather, the parties were to use their "best efforts" to "promptly negotiate and execute a definitive written agreement. . . ." Mot.Int.Ex. A. The letter also set forth several conditions precedent to consummating the merger. *Id.*

The transaction closed on August 30, 1994, with the execution of the merger agreement. Aside from the acquisition and stock exchange provisions, the agreement contained several representations and warranties about DZ's financial condition. For example, DZ warranted that its 1993 Annual Report and its first two quarterly reports for 1994 (provided to McDonald's in connection with the transaction) had been prepared in accordance with GAAP, fairly presented the company's financial position, and, most important, "did not, at their respective times of filing, contain any untrue statement of material fact or omit to state a material fact necessary in order to make the statements therein not misleading in light of the circumstances under which they were made." Def.'s Resp.Mot.Int.Ex. F ¶ 5.3. These representations were "independently relied upon by McDonald's regardless of any other investigation made or information obtained by McDonald's. . . ." *Id.* art. V. The agreement gave McDonald's the right to perform due diligence, and granted access to DZ's "offices, properties, books and records to conduct a full and complete investigation, including legal, financial, operational and environmental reviews of the [company's] business affairs." *Id.* ¶ 7.2. But this paragraph reiterated that any information gleaned from the investigation did not affect McDonald's right to rely on DZ's representations and warranties. *Id.* The agreement also contained a limitation on remedies, stating that the redress set forth in paragraph 11.2 for breach of representation or warranty "shall be the sole monetary remedy available to McDonald's under this Agreement." *Id.* ¶ 11.2; *see id.* ¶ 12.1.

The shares McDonald's received in the transaction were issued directly from DZ and for the five days before the deal's closing. *See*

constituted a "private placement" exempt from registration under the Securities Act of 1933. *See id.* ¶ 4.24; *see also* 15 U.S.C. § 77d(2). They were subject to a Sale Restriction and Registration Rights Agreement, which effectively prevented McDonald's from selling its DZ stock on the market for two years. *See* Def.'s Resp. Class Br.Ex. 13.

McDonald's first surfaced in this litigation on March 6, 1997, when its attorneys requested leave to file an appearance as additional counsel for plaintiffs. We permitted the appearance over the defendants' objections, based on class counsel's representations that McDonald's attorneys would join the case as co-counsel. Def.'s Resp. Mot.Int.Ex. M. Class counsel also took the position that McDonald's was an "absent class member." *Id.* At this point in the litigation, the class period still extended through January 17, 1995, well past the closing of the merger transaction.

Because McDonald's had purchased DZ stock within the class period as defined at the time of its appearance, it shared the view that it was an absent class member. McDonald's also believed that, as DZ's largest shareholder, it was entitled to be actively involved in the litigation. As such, McDonald's worked with class counsel to develop strategies and divide responsibilities in connection with discovery and motion practice. *See* Mot.Int. at 2. Although this Court later shortened the class period in May 1997 to end on a date that preceded the McDonald's–DZ merger closing, class counsel reiterated their belief as late as July 22, 1997 that McDonald's was an absent class member, and attempted to extend the class period (past the closing date) with a motion to add class representatives on August 7, 1997.

Simultaneously, however, class counsel were negotiating with the defendants to settle the case without McDonald's. On July 7, 1997, class counsel made a settlement demand, followed by a July 9, 1997 letter to defense counsel clarifying that "the figure set forth in our letter of July 7, 1997 does not include, reflect or contemplate the claims of McDonald's Corporation." Def.'s Resp. Mot.Int.Ex. A.

Mot.Int.Ex. D. Todd Collins, the letter's author, contacted McDonald's attorney David Haller to tell him that class counsel had made a settlement demand. Haller Aff. ¶ 11. Although Collins did not reveal the demand's dollar amount, he and Haller discussed the damages figure used to calculate it. *Id.* Haller states in his affidavit that "it was clear to me that the demand ... did not take into account McDonald's damages" and that the purpose of class counsel's July 9 letter was to convey the need to negotiate with McDonald's if the defendants were serious about settlement. *Id.* ¶ 12. Haller was thus left with the impression that class counsel still considered McDonald's part of the class. *Id.* ¶ 13. McDonald's was not privy to further settlement discussions.

On August 27, 1997, McDonald's moved to compel defendants to permit its participation in discovery, which was just entering the deposition phase. This Court held a status hearing on September 2, 1997, to clarify the purposes of McDonald's involvement. Class counsel Kenneth Wexler said he understood that McDonald's was participating as co-counsel. Def.Resp.Mot.Int.Ex. N. McDonald's counsel took the position that McDonald's was also entitled to separate representation as the largest shareholder in the plaintiff class, and explained that McDonald's and class counsel's joint efforts would benefit the entire class. *Id.* Concerned that we had been misled about the purpose of McDonald's appearance from the beginning, and in light of McDonald's inability to justify its newly desired form of participation with citations to legal authority, this Court denied McDonald's motion to compel discovery participation. *Id.* The Court pointed out that McDonald's had not moved to intervene, had not questioned the adequacy of class counsel's representation, and that it could protect its own interests in a fairness hearing at the case's conclusion. *Id.*

On September 9, 1997, class counsel and defendants reached a full settlement on the merits. The Court then set a schedule for the parties to file a joint motion for preliminary settlement approval. The settlement papers submitted on October 20, 1997 explicitly excluded McDonald's from the definition of "Class" and "Class Members" bound by the settlement. *See* Pls.' Br. Class Mem. at 2. The settlement papers also provided that the plaintiffs' pending motion to add class representatives would become moot after the Court entered judgment and that plaintiffs would not appeal any of this Court's rulings. Stip. & Agreement of Settlement ¶ 6c. The "Cash Settlement Amount" was set at $3,000,000. This amount, plus interest, and minus attorneys' fees and notice and administration costs, was to be distributed among class members who filed valid proofs of claim. *Id.* ¶¶ 6–7, 12–13.

On October 10, 1997, McDonald's moved to intervene. Now certain of its exclusion from the settlement, and strongly suspecting that class counsel planned to abandon the fully briefed motion to restore the class period with new representatives, McDonald's believed that it was no longer adequately represented by the plaintiffs. It thus sought intervention under Fed.R.Civ.P. 24(a) and (b) to: (1) appeal this Court's ruling limiting the class period; (2) obtain a ruling on the pending motion to add class representatives; (3) seek a determination that it is a member of the current class and to appeal any ruling to the contrary; and (4) participate in any subsequent discovery, trial, and settlement discussions.

Both defendants and class counsel opposed the motion to intervene. Defendants insisted that McDonald's has no interest in this fraud-on-the-market litigation because its unique merger transaction puts it in a "class of one." Defendants urged that McDonald's has nothing in common with the settling class plaintiffs, who purchased DZ stock in impersonal, open-market purchases without the benefit of due diligence and intense face-to-face negotiations. This "uniqueness," along with the motion's asserted untimeliness and potential for prejudice, drove the defendants' arguments against intervention. Class counsel simply objected to the intervention as "late and unnecessary," maintaining that McDonald's can pursue its own action against the defendants because it is not bound by the settlement.

After reviewing the intervention briefs, this Court determined that a ruling on Mc-

Donald's class status was essential to a proper intervention analysis. We therefore requested briefing on (1) whether McDonald's is part of the class as currently defined and (2) if not, whether it was a part of the class as originally structured by this Court's order in *Discovery Zone II*. We stayed the motion to intervene subject to its automatic renewal after ruling on McDonald's class status.

After carefully considering the submissions on McDonald's class status, as well as the intervention briefs, we conclude that McDonald's must be allowed to intervene. Because McDonald's was a member of the class as defined in *Discovery Zone II*, it meets the requirements for both intervention as of right and permissive intervention under Fed. R.Civ.P. 24. The scope of intervention is not unlimited, however. McDonald's may intervene only to participate in settlement negotiations and any subsequent fairness hearing, and to appeal any settlement order or class rulings after final judgment.

## ANALYSIS

### I. The Purpose of Intervention

■ The Seventh Circuit recently held that intervention is the proper mechanism for nonparties to protect interests that may be adversely affected by a trial court's judgment. *Felzen v. Andreas*, 134 F.3d 873, 874 (7th Cir.1998), *petition for cert. granted in part*, —— U.S. ——, 119 S.Ct. 29, —— L.Ed.2d —— (1998). Nonparties can no longer appeal without first intervening in the district court, no matter how crucial their interests. *Id.; In re Brand Name Prescription Drugs Antitrust Litig.*, 115 F.3d 456, 457 (7th Cir.1997). McDonald's has thus invoked the appropriate procedural mechanism by moving to intervene to protect any interests that may be impaired by the parties' settlement.

■ The Federal Rules of Civil Procedure contemplate two types of intervention: permissive and as a matter of right. Rule 24(a) governs intervention as of right, and provides that:

> [u]pon timely application anyone shall be permitted to intervene in an action ... (2) when the applicant claims an interest relating to the property or transaction which is

the subject of the action and the application is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

This translates into four requirements: (1) the applicant must have an "interest" in the property or transaction which is the subject of the action; (2) disposition of the action as a practical matter may impede or impair the applicant's ability to protect that interest; (3) the application is timely; and (4) no existing party adequately represents the applicant's interest. *Security Ins. Co. of Hartford v. Schipporeit, Inc.*, 69 F.3d 1377, 1380 (7th Cir.1995); *Reich v. ABC/York–Estes Corp.*, 64 F.3d 316, 321 (7th Cir.1995). Permissive intervention falls under the next subsection, Rule 24(b). Subsection (b)(2) provides that "[u]pon timely application anyone may be permitted to intervene in an action ... (2) when an applicant's claim or defense and the main action have a question of law or fact in common." A permissive intervener must demonstrate that (1) it shares a common question of law or fact with a party, (2) its application is timely, and (3) the court has independent jurisdiction over its claims. *See Security*, 69 F.3d at 1381; *Romasanta v. United Airlines, Inc.*, 537 F.2d 915, 917–18 (7th Cir.1976), *aff'd sub nom. United Airlines, Inc. v. McDonald*, 432 U.S. 385, 97 S.Ct. 2464, 53 L.Ed.2d 423 (1977).

■ In the class action context, absent (or unnamed) class members generally can intervene if the class representatives are no longer adequately representing their interests—although the absent class member must technically meet either Rule 24(a)'s or (b)'s requirements as well. *See* HERBERT NEWBERG & ALBA CONTE, NEWBERG ON CLASS ACTIONS § 16.06–16.07, at 16–35, 16–39 (3d ed.1992). Nevertheless, analyzing these requirements is much simpler if the proposed intervener is a class member; for example, an absent class member would have little difficulty showing an interest in the action (Rule 24(a)) or a common question of law or fact with the class (Rule 24(b)). We thus address as a thresh-

old matter whether McDonald's is a member of the current class.

## II. McDonald's Was a Member of the Originally Certified Class But Does Not Belong to the Class As Currently Defined

### A. McDonald's Belonged to the Original Class

■ McDonald's was a member of the class as originally defined in *Discovery Zone II*. It falls squarely within the class definition ratified in that opinion: " 'all persons who purchased the common stock of Discovery Zone Inc.' between February 17, 1994 and .... January 17, 1995." 169 F.R.D. at 107 (quoting and modifying plaintiffs' proposed class definition). Under the DZ–McDonald's merger agreement, McDonald's acquired 5.5 million shares of DZ common stock[5] effective August 30, 1994—well before the January 17, 1995 class period end date. *See* Def. Mot.Resp.Int.Ex. F ¶ 2.1. Although this stock was issued directly from DZ and its future sale was restricted, the class definition does not contain any conditions excluding purchasers of directly issued or restricted stock. Nor does the class definition mandate that the common stock purchaser sue under a fraud-on-the-market theory. As such, the fact that McDonald's acquired its shares though a privately negotiated contract permitting due diligence does not automatically exclude it from the class definition.

Defendants nonetheless insist that, despite this broad class definition, the differences in McDonald's stock (acquired directly from the issuer with restrictions on sale), as well as its purchase (private contract signed after due diligence investigation), exclude it from the

original class as an atypical purchaser under Fed.R.Civ.P. 23. They claim that these differences render McDonald's "unique," in a "class of one," and prevent its participation in a 10b–5 action premised on a fraud-on-the-market theory. A number of authorities, which we examine below, rob these arguments of their force. Although the decisions focus primarily on class certification and deal less directly with class membership, we find them highly persuasive because they certify classes that include members who possess the very distinctions that defendants attribute to McDonald's.

In certifying securities fraud class action suits brought under SEC Rule 10b–5, courts focus on whether the class members allege a similar course of fraudulent conduct by the defendants. Thus, the emphasis is on common behavior of the defendants, not the plaintiffs. For example, *In re National Student Mktg. Litig.*, 1973 WL 431 (D.D.C. Oct.2, 1973), certified a securities fraud class action that included persons who had bought shares on the open market, in private transactions, and through acquisitions.[6] The latter group (the "acquisitionees") objected to class certification insofar as it pertained to them, arguing that their claims were atypical (i.e., depended on different misrepresentations) and conflicted with the open market purchasers' interests. The court nevertheless held the acquisitionees to be class members because they relied on the same allegedly false and misleading financial statements as the other purchasers. *Id.* at *4–5. The court emphasized that any individual questions "primarily relate to potential discrepancies in the amount of damages to which various class members may be entitled"—a

---

**5.** SEC Rule 10b–5 prohibits fraud "in connection with the purchase or sale of any security." 17 C.F.R. § 240.10b–5. The 1934 Securities Exchange Act defines "purchase" broadly to "include any contract to buy, purchase, or otherwise acquire." 15 U.S.C. § 78c(a)(13). Interpreting this definition, the Seventh Circuit has held that "[a]n acquisition or disposition of securities in exchange for other securities falls within the [1934 Securities Exchange Act] statutory definitions of 'purchase or sale,' and this reasoning applies to a case of merger." *Dasho v. Susquehanna Corp.*, 380 F.2d 262, 266 (7th Cir.1967).

**6.** The allegations bear a striking resemblance to the class claims in this case. The plaintiffs had alleged that "the defendants participated in the preparation, dissemination and promotion of false and misleading financial reports, statements, press releases and predictions which resulted in the artificial inflation of the price of NSMC stock." 1973 WL 431, at *1. Although this decision preceded the advent of the fraud-on-the-market theory, the elements of a securities fraud claim and the requirements for class action certification in force then do not differ from today's standards.

determination to be made after any finding of liability.[7] *Id.* at *5.

Similarly, in *Deutschman v. Beneficial Corp.,* 132 F.R.D. 359 (D.Del.1990), the court certified a class under a fraud-on-the-market theory—despite a class representative's vulnerability to unique defenses that he did not rely on the market—because his claims and the rest of the class' were based on the same allegedly fraudulent course of conduct. The proper focus for purposes of class certification is "whether the overall scenario is sufficiently similar or typical. . . ." *Id.* at 373 (internal quotations and citations omitted). Rejecting the defendants' attempt to defeat class certification by rebutting the representative's market reliance, the court found that

> the common issues in this case concern defendants' course of conduct, i.e. whether defendants (1) caused to be issued certain misrepresentations; (2) with scienter; (3) which misrepresentations were material in that they caused the market price of Beneficial common stock to be artificially inflated. If plaintiff and every class member were to bring suit individually, each would be required to prove this course of conduct. Questions of misrepresentation, materiality, and scienter are "the paradigmatic common questions of law or fact in a securities fraud action."

*Id.* at 372 (citation omitted). The court explained that "allowing the possibility of 'no-reliance' defense to prevent certification of a class would eviscerate the usefulness of the class action device in securities fraud cases." *Id.* at 373.

As in these cases, McDonald's and the class's 10b–5 claims present a similar "overall scenario" of common defendant conduct. McDonald's and the class both allege that defendants misrepresented DZ's performance in 1993 and 1994, and waited until the plaintiffs' investments were locked in and the defendants had safely unloaded their shares to begin revealing the true state of the company in September 1994, precipitating a sharp decline in share value. The elements of misrepresentation, scienter, and materiality are satisfied by these common allegations,

as we determined in *Discovery Zone I.* Thus, the "paradigmatic common questions of law or fact in a securities fraud action" drive both McDonald's and the class's 10b–5 claims.

Just as in *National Student Marketing,* McDonald's and the class rely on many of the same allegedly fraudulent financial statements—DZ's 1993 10K and 1994 first and second quarter 10Q reports—which allegedly misstated earnings based on accounting practices that violated GAAP. The fact that McDonald's acquired its shares of Discovery Zone through a private transaction with the opportunity for due diligence does not obliterate this commonality because the merger agreement specifically contemplates McDonald's reliance on the accuracy of these financial statements. DZ warranted in the agreement that these statements were prepared in accordance with GAAP, fairly presented the company's financial position, and "did not, at their respective times of filing, contain any untrue statement of material fact or omit to state a material fact necessary in order to make the statements therein not misleading in light of the circumstances under which they were made." Def.'s Resp. Mot.Int.Ex. F ¶ 5.3. These representations were "independently relied upon by McDonald's regardless of any other investigation made or information obtained by McDonald's. . . ." *Id.* art. V.

The fact that McDonald's may be subject to individual reliance defenses based on its private, face-to-face negotiations and greater access to information is not grounds for class exclusion. Both *Deutschman* and *National Student Marketing* teach that such individual reliance issues do not defeat class certification (or, consequently, class membership), and that they may be resolved separately after a finding of liability, if any. This point is even more forcefully made by *In re Scorpion Tech. Inc. Sec. Litig.,* 1994 WL 774029 (N.D.Cal. Aug. 10, 1994), which certified a class that included investors who bought their stock through individually negotiated private offerings below the prevailing market price. Echoing the defendants in this case, the defendant in *Scorpion* argued that these

---

7. The court explained that the acquisitionees could always bring their own actions or opt out

of the class if dissatisfied with the named plaintiffs' representation. 1973 WL 431, at *5.

investors should be excluded from a fraud-on-the-market class because their private transactions precluded them from claiming that they relied on market integrity in purchasing the stock. The court disagreed, holding that "the defense of non-reliance is not a basis for denial of class certification", and that "individual reliance is not a barrier to class certification." *Id.* at \*5–6.

Defendants' remaining arguments fall short as well. Their briefs devote much effort to arguing that McDonald's "knew the truth" about DZ's allegedly improper accounting practices, that other class claims pit McDonald's against the class (e.g., the claim that DZ misrepresented the financial effect of the August 1994 merger agreement with McDonald's), and that the restrictions on McDonald's resale of its DZ stock put it in a "class of one." First, any contentions about what McDonald's did or did not know are fact questions that must be litigated and, as such, are not proper considerations in this opinion. Second, that McDonald's and the class members may have opposing interests with respect to some of the alleged misrepresentations does not alone render McDonald's ineligible for class representation. *See In re Nat'l Student Marketing Litig.*, 1973 WL 431, at \*5 ("Although the approval of the requested class would cause certain acquisitionees to be in the positions of both plaintiffs and defendants, this alone does not necessarily render the named plaintiffs incapable of adequately representing the class"). Finally, the two-year resale restriction on McDonald's DZ stock does nothing to alter the commonality of the defendants' allegedly fraudulent conduct.

**B. McDonald's Is Not Currently in the Class Because Its Purchase Post–Dates the July 19, 1994 Cut–Off Established in This Court's May 27, 1997 Ruling**

■ McDonald's class membership was extinguished, however, by this Court's May 27, 1997 order circumscribing the class period. Based on class counsel's inability to proffer appropriate class representatives who purchased DZ stock during the originally certified class period, this Court cut the class

period back to July 19, 1994, the date of the latest remaining representative's purchase. McDonald's argues that its July 18, 1994 Letter of Intent constituted a "purchase" of DZ securities, bringing it within the class period. But the Letter's provisions belie any binding contract to purchase or sell securities at that point in time. The Letter explicitly states that it is non-binding, and established several conditions precedent to the merger's closing. *See Portnoy v. Revlon, Inc.*, 650 F.2d 895 (7th Cir.1981) (similar provisions in a Letter of Intent did not constitute a "sale" of stock under section 16(b) of the 1934 Securities Exchange Act, which prohibits insiders from profiting on a short-term stock purchase and sale). And though the transaction was considered effective as of June 1994 for accounting purposes, McDonald's does not claim that DZ shares actually changed hands any time before the August 30, 1994 closing. Therefore, McDonald's cannot be said to have purchased DZ shares until August 30, 1994, over a month after the close of the class period.

**III. Intervention As a Matter of Right**

Against the backdrop of McDonald's current non-class status, we examine whether it may intervene in this case under Rule 24. As we shall see, our class status ruling simplifies the intervention analysis and establishes the proper scope of intervention.

■ We begin with intervention as a matter of right under Rule 24(a). As explained earlier, an applicant for intervention under this subsection must make a four-fold showing: (1) an "interest" in the property or transaction which is the subject of the action; (2) disposition of the action as a practical matter may impede or impair the applicant's ability to protect that interest; (3) the application is timely; and (4) no existing party adequately represents the applicant's interest. *Security Ins. Co. of Hartford v. Schipporeit, Inc.*, 69 F.3d 1377, 1380 (7th Cir. 1995); *Reich v. ABC/York–Estes Corp.*, 64 F.3d 316, 321 (7th Cir.1995). When considering a motion to intervene, the court "must accept as true the non-conclusory allegations of the motion." *Reich,* 64 F.3d at 321. "A motion to intervene as a matter of right,

moreover, should not be dismissed unless it appears to a certainty that the intervener is not entitled to relief under any set of facts which could be proved under the complaint." *Id.* at 321 (citing *Lake Investors Dev. Group v. Egidi Dev. Group*, 715 F.2d 1256, 1258 (7th Cir.1983)). Each intervention case is "highly fact specific and tend[s] to resist comparison to prior cases." *Id.* at 321.

### A. McDonald's Has an Economic Interest in a Specific Fund That Would be Impaired Absent Intervention

■ "The 'interest' required by Rule 24(a)(2) has never been defined with particular precision." *Security Ins. Co. of Hartford*, 69 F.3d at 1380. The would-be intervener's interest must, however, be a "direct, significant, legally protectable one. . . . It is something more than a mere "betting" interest, but less than a property right. . . ." *Id.* at 1380–81 (citations omitted). Still, "interests in property are the most elementary type of right that Rule 24(a) is designed to protect," and many courts find this requirement met with "a readily identifiable interest in land, funds, or some other form of property." 7C CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1908, at 272–74 (1986).

■ The desire to secure insurance coverage to satisfy a potential judgment against a legal adversary is a sufficient interest for Rule 24(a) intervention. In *Security Ins. Co. of Hartford v. Schipporeit*, the court granted an applicant the right to intervene in a declaratory judgment action between its adversary and the adversary's insurance carrier. 69 F.3d at 1380–81. LaSalle Street Church, the would-be intervener, initially sued George Schipporeit and his architectural firm for installing a defective roof. Schipporeit's insurance carrier (Security Ins. Co.) brought a separate suit seeking a declaratory judgment that it had no duty to defend or indemnify Schipporeit in the *LaSalle* action. The Seventh Circuit affirmed the district court's grant of intervention and its finding that it could not "imagine a more pressing, more clear, and more obvious interest than the LaSalle Street Church has in this case." 69 F.3d at 1380–81. Schipporeit had no signifi-

cant assets except for the Security policy, which would be unavailable to satisfy La-Salle's claims if Security won the declaratory judgment action.

■ An interest in a specific settlement fund likewise satisfies Rule 24(a)'s interest prong. *See Mountain Top Condominium Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 366 (3d Cir.1995) ("[W]hile a mere economic interest may be insufficient to support the right to intervene, an intervener's interest in a specific fund is sufficient to entitle intervention in a case affecting that fund."). In *Mountain Top*, the intervention applicants were a family (the Seipels) that had originally sued their condominium association (MTCA) for violating its own by-laws by failing to appoint an Insurance Trustee to manage the distribution of hurricane damage insurance funds. The Seipels moved to intervene in the MTCA's separate litigation with its construction contractors, which the MTCA proposed to settle by depositing the remaining hurricane damage insurance money in a settlement fund in return for the contractor's release of construction liens.

The Third Circuit held that the MTCA's attempt to distribute these funds usurped the authority of the insurance trustee and necessarily affected the Seipels, for whom the funds were to be held in trust. *Id.* at 368. It was this economic interest in the identifiable insurance fund that entitled the Seipels to participate in the MTCA contractor litigation, along with the fact that this interest "as a practical matter may indeed become affected or impaired in their absence." *Id.*

■ McDonald's has an equally significant interest in the class plaintiffs' settlement fund. Like the class plaintiffs, Mc-Donald's alleges that its Discovery Zone investment was drastically devalued when the defendants' 1993–1994 earnings misstatements and accounting manipulations came to light. After this Court dismissed all claims against the bankrupt Discovery Zone, the only fund available for satisfying any potential judgment or settlement based on this allegedly fraudulent course of conduct was the individual defendants' Directors' and Officers' Liability Insurance

594

policy. But that policy has a liability limit of $5 million, and three million dollars of this money is earmarked for the proposed settlement fund. McDonald's invested in DZ to the tune of $78,000,000, *see* Pls.' Resp. Mot. Int. at 1, and its settlement demand is nearly four times the proposed settlement.

Granting McDonald's the right to intervene protects its pro rata interest in the insurance and settlement funds. As in *Security Ins. Co. of Hartford* and *Mountain Top*, the insurance money is the only means of satisfying any settlement or judgment against the defendants. The proposed settlement fund dramatically reduces even this amount. Allowing the proposed settlement to go forward without McDonald's would, as a practical matter, significantly impair its interests by imposing a severe damages cap. Consequently, McDonald's satisfies both the interest and impairment requirements of Rule 24(a).

### B. McDonald's Application for Intervention Is Timely

 The test for timeliness is "essentially one of reasonableness: potential interveners need to be reasonably diligent in learning of a suit that might affect their rights, and upon so learning they need to act reasonably promptly." *Reich v. ABC/York–Estes Corp.*, 64 F.3d 316, 321 (7th Cir.1995) (citation omitted). The timeliness determination "requires a consideration of all the circumstances of a case and not just the point to which the suit has progressed." *Ragsdale v. Turnock*, 941 F.2d 501, 504 (7th Cir.1991). The *Ragsdale* court outlined four factors for consideration: "(1) the length of time the intervener knew or should have known of his or her interest in this case, (2) the prejudice to the original party caused by the delay, (3) the resulting prejudice to the intervener if the motion is denied, and (4) any unusual circumstances." *Id.*

### 1. Length of Time Between Discovery of Interests and Motion to Intervene

 Until the proposed settlement was announced on September 9, 1997, McDonald's claims that its interests were both consonant with the plaintiff class' and adequately represented by class counsel. Therefore, according to McDonald's, its motion to intervene on October 10, 1997 puts just one month between discovery of its separate interests and its attempt to intervene.

In support of its belief in class counsel's adequate representation until September 1997, McDonald's points to (1) its work with class counsel to develop strategies and divide responsibilities for discovery and motion practice; (2) class counsel's repeated statements that it considered McDonald's an absent class member; (3) class counsel and McDonald's July 1997 conversation about the class' settlement demand, and McDonald's understanding that the purpose of class counsel's correspondence with defendants was to convey the importance of including McDonald's in settlement negotiations; (4) class counsel's August 7, 1997 motion to add class representatives and extend the class period (which, if granted, would have put McDonald's back into the class); and (5) class counsel's September 2, 1997 statement that it understood McDonald's to be participating as their co-counsel.

However, when McDonald's learned in September 1997 that class counsel had unilaterally settled the case and specifically excluded McDonald's from the settlement class, it became clear that class counsel no longer represented McDonald's interests. Within a month after McDonald's learned that it had been excluded, that class counsel had abandoned the fully briefed motion to restore the class period, and that the settlement agreement surrendered appeal rights on the class period rulings, McDonald's filed a motion to intervene.

For purposes of this motion, we must accept the truth of the above allegations. Considering them in conjunction with the evidence before us, such as court transcripts and correspondence, we find that McDonald's moved to intervene well within a reasonable amount of time after discovering that class counsel was no longer litigating or negotiating on its behalf. Analogous authority in this Circuit bears this out.

In *Reich v. ABC/York–Estes Corp.*, the Seventh Circuit held that female exotic dancers' motion to intervene in a FLSA suit against their employer was timely when they filed the motion as soon as it was clear that their employer was no longer representing their interests. 64 F.3d at 321–22. The dancers had known about the FLSA suit over nineteen months before moving to intervene. But like McDonald's, "the dancers were assured by ABC [their employer] that it was vigorously defending their status as independent contractors." *Id.* at 321. That this was untrue became clear when the Secretary of Labor moved for default judgment based on ABC's failure to defend the suit. Within a month after the hearing on the Secretary's motion, the dancers moved to intervene. The Seventh Circuit granted the motion, holding that timeliness depends not on when the would-be interveners learn about the lawsuit, but rather when they discover that existing parties no longer adequately represent their interests:

> [W]e do not expect a party to petition for intervention in instances in which the potential intervener has no reason to believe its interests are not being properly represented.... This is precisely the situation [sic] the dancers found themselves. They reasonably believed their employer was representing their interests and, considering the believed adequacy of representation, could not have legitimately petitioned to intervene. When they discovered that ABC was not adequately representing them, they filed a petition to intervene posthaste. This is all they must do to reasonably comply with the timeliness requirement of Rule 24(a)(2).

*Id.* at 322.

As in *Reich*, McDonald's was under the impression that its interests were being adequately represented until a month before it moved to intervene. Class counsel repeatedly stated its belief that McDonald's was an absent class member, invited McDonald's to assist it in representing the class, and made efforts to extend the class period past McDonald's purchase date. Although McDonald's learned in July 1997 that class counsel and defendants had begun settlement negotiations that did not take into account McDonald's claims, McDonald's was led to believe that class counsel had conveyed in discussions with defendants the need to include McDonald's in the negotiations. McDonald's was thus lulled into believing that existing parties were representing its interests. When it discovered otherwise in September 1997, McDonald's moved swiftly to intervene.

## 2. Prejudice to the Current Parties Is Not Sufficient to Deny Intervention

 Any potential prejudice to either the class or the defendants is insufficient to prevent McDonald's intervention. Class counsel and defendants argue that McDonald's intervention will greatly prejudice them because it will defeat a carefully crafted settlement that was reached only after three years of contentious litigation. Although this point has considerable force if taken at face value, the law in this Circuit and persuasive authority from other courts, combined with other circumstances in this case, demonstrates that the parties' prejudice claims are weak.

First, the parties knew about McDonald's and its potential 10b–5 claims from the beginning: defendants negotiated McDonald's DZ stock purchase face-to-face, and the class relies on this transaction for part of its 10b–5 claim. In this situation, courts have not found sufficient prejudice to the original parties even when the motion to intervene follows the entry of a final settlement order. *See Romasanta v. United Airlines, Inc.*, 537 F.2d 915, 919 (7th Cir.1976) (intervention was timely when sought after the district court's settlement order but as soon as it was apparent that plaintiffs would not appeal the denial of class certification; intervention "would not prejudice the adjudication of the rights of the original parties, for defendant knew of the potential liability to this class since the commencement of the class action"), *aff'd sub nom. United Airlines, Inc. v. McDonald*, 432 U.S. 385, 97 S.Ct. 2464, 53 L.Ed.2d 423 (1977); *South v. Rowe*, 759 F.2d 610, 612 (7th Cir.1985) (intervention by third-party beneficiary nearly two years after entry of consent decree and one day before its expiration was timely because the motion was filed one

month after intervener discovered detriment to his interests; court found "no indication in the record" that defendant was prejudiced by the delay).

Second, the fact that intervention may inhibit, disrupt or destroy settlement negotiations or agreements does not demonstrate prejudice to the original parties sufficient to deny intervention. In *Lane v. Bethlehem Steel Corp.*, 93 F.R.D. 611 (D.Md.1982), for example, putative class members moved to intervene after the court entered judgment on the plaintiffs' employment discrimination claims. The district court permitted intervention as of right to appeal the court's earlier denial of class certification:

> The court is not unmindful of the lessened incentive to settle the claims of the named plaintiffs in suits filed as class actions, due to the possibility of an appeal by "strangers" to the litigation. On the other hand, the rights of putative class members should not be shunted aside simply because the named plaintiffs are poorly prepared or desirous of an end to the litigation.

*Id.* at 618. Similarly, in *Buchet v. ITT Consumer Fin. Corp.*, 845 F.Supp. 684 (D.Minn. 1994), the court permitted two class members to intervene to object to a proposed settlement between class counsel and the defendants, explaining:

> "Prejudice that results from the mere fact that a proposed intervener opposes one's position and may be unwilling to settle always exists when a party with an adverse interest seeks intervention. Any prejudice to the plaintiffs ability to settle results not from the fact of the proposed interveners' delay in seeking intervention, but rather from the proposed interveners' presence in the suit. Rule 24(a) protects precisely this ability to intervene in litigation to protect one's interests." Similarly, in this case, the fact that additional parties may make future negotiations more difficult is insufficient to prevent them from joining the action.

*Buchet,* 845 F.Supp. at 689 (quoting *Mille Lacs Band of Chippewa Indians v. State of Minnesota,* 989 F.2d 994, 999 (8th Cir.1993)).

As these cases demonstrate, any prejudice to the parties here results not from the motion to intervene's untimeliness, but rather from McDonald's mere presence in the suit. It will doubtless be far more difficult to settle this case with McDonald's present, given that its settlement demand dwarfs the settlement fund currently contemplated. But we ruled above that McDonald's has an interest in this litigation that mandates its participation. The fact that the current parties are weary of this litigation (a position with which this Court is eminently sympathetic), does not diminish McDonald's legitimate interests.

The defendants nevertheless insist that *City of Bloomington v. Westinghouse Elec. Corp.*, 824 F.2d 531 (7th Cir.1987), demonstrates the very prejudice suffered by the parties in this case. The facts of *Westinghouse*, however, are easily distinguished. The would-be intervener in that case was a public interest group (INPIRG) that sought to intervene in the City's suit against Westinghouse for alleged environmental contamination. Despite the fact that the parties held a press conference announcing the beginning of settlement negotiations and their anticipated course, INPIRG waited almost a year to intervene. By then, the parties had hammered out a consent decree that had been crafted over fourteen months. The court held that INPIRG's intervention would unduly prejudice the parties under these circumstances. *Id.* at 535–36. Most important, the court pointed out that INPIRG had been given the opportunity to submit comments on the proposed decree to the Justice Department, obviating the need to protect its interests through intervention. *Id.* at 536.

In this case, however, McDonald's moved to intervene just one month after it became aware of the adverse impact on its interests. Moreover, the parties kept their negotiations secret; unlike INPIRG, McDonald's never had the opportunity for input into the proposed settlement. Nor can the parties' negotiations be compared to those in *Westinghouse*. Although we acknowledge the parties' considerable efforts in reaching the proposed settlement, it was only two months in the making and required only the parties' input—a far cry from the fourteen-month

development of the *Westinghouse* consent decree, which had to incorporate public commentary. Finally, INPIRG's interest in the *Westinghouse* litigation was much less concrete than McDonald's is here. INPIRG was never part of a class, and had no reason to expect that the existing parties would represent its interests more vigorously than the rest of the citizens of Bloomington. For the above reasons, McDonald's motion to intervene would not unduly prejudice the existing parties.

### 3. Denying the Motion to Intervene Would Unduly Prejudice McDonald's

■ The lack of prejudice to the class and defendants stands in contrast to the prejudice McDonald's would suffer if denied intervention. First, as discussed earlier, if McDonald's had to file its own action, its chances of *collecting on any judgment are slim*, given the potential class recovery in the parties' proposed settlement agreement. Second, McDonald's would be prejudiced by the additional burden of filing its own separate lawsuit at this point in time, as well the inevitable delay in any recovery. *See South v. Rowe*, 759 F.2d at 612–13 (7th Cir.1985) (finding intervener would be prejudiced if forced to file his own suit because it would be costly and result in further delays).

Third, if we approved the proposed settlement, it could easily be reversed for its failure to incorporate McDonald's interests. In *In re General Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106 (7th Cir.1979), the Seventh Circuit reversed a settlement on fairness grounds, in part because it did not take into account the interests of certain class members. The suit involved General Motors' substitution of engines in its Oldsmobile 1977 model year cars. The district court originally certified a class action consisting of all persons who bought 1977 Oldsmobiles before October 13, 1977 and did not know about the engine substitution. Later, the court approved a settlement subclass of pre-April 11, 1977 Oldsmobile purchasers—although it refused to redefine the entire class to end on this date. As such, the post-April 11, 1977 purchasers' claims remained viable. The Seventh Circuit nevertheless reversed dis-

trict court's approval of the subclass settlement:

> Not only was the settlement arguably hasty, but also the settlement agreement contemplated the abandonment of the prosecution of claims of post-April 10 class members. The settlement agreement entered into by the Attorneys General obligated them to seek settlement of the entire class action even though the agreement obligated GM to offer payments to only part of the certified class. The agreement contemplated narrowing the class certified to those who purchased Oldsmobiles before April 11, 1977, despite the original certification of the class to include those who purchased before October 13. GM subsequently formally moved the court for such a revised class definition to conform to the settlement agreement. The court denied GM's motion, but did decide to create a subclass for settlement purposes. Although the abandonment by the Attorneys General of the claims of post-April 10 purchasers does not by itself warrant the reversal of the settlement of the claims of the pre-April 11 purchasers, it does indicate that the representation during the negotiations may have been inadequate as to all Oldsmobile purchasers who constituted the original class.

*Id.* at 1128–29. Given the "irregular conduct of the negotiations, the failure of the trial court to examine the irregularities thoroughly, and the evidence in the record indicating that the irregularities may have damaged the interests of the class," the Seventh Circuit found that the district court had abused its discretion in approving the subclass settlement. *Id.* at 1133.

In this case, the proposed settlement does not merely contemplate abandoning McDonald's claims, it explicitly does so. Although McDonald's is not a member of the current class, it nonetheless has a substantial interest in this litigation and in any settlement between the parties. The *General Motors* case can easily be read to hold that excluding those with an interest in the litigation from a settlement agreement is highly prejudicial, even if the agreement does not

affect their ability to pursue their own ·claims.

McDonald's has thus established that its absence from this litigation will cause it enough prejudice to warrant intervention under Rule 24(a). This, along with the fact that McDonald's moved to intervene as soon as it discovered the adverse effects on its interests and the lack of prejudice that intervention would pose to the original parties, leads us to conclude that McDonald's motion to intervene is timely.

## C. McDonald's Interest Is Not Adequately Represented By Existing Parties

Class counsel and defendants settled this case by explicitly excluding McDonald's from the class of DZ investors permitted access to the settlement fund. Under these circumstances, we think it obvious that no existing party is adequately representing McDonald's interests.

 McDonald's has satisfied all four requirements of Rule 24(a) intervention. Consequently, it has the right to intervene in this action. The scope of this intervention is discussed later in the opinion.

## IV. Permissive Intervention

 Even if McDonald's did not meet the standards for intervention as of right under Rule 24(a)(2), we hasten to add that McDonald's would still be permitted to intervene under 24(b)(2).[8] Federal Rule of Civil Procedure 24(b)(2) provides that "[u]pon timely application anyone may be permitted to intervene in an action ... (2) when an applicant's claim or defense and the main action have a question of law or fact in common." As noted earlier in the opinion, this boils down to three requirements: (1) the applicant must share a common question of law or fact with a party, (2) its application must be timely, and (3) the court must have independent jurisdiction over its claims. Other than these requirements, "intervention under 24(b)(2) is entirely discretionary.... In exercising that discretion, the court must give some weight to the impact of the intervention on the rights of the original parties."[9] *Security Ins. Co. of Hartford,* 69 F.3d at 1381 (citation omitted).

## A. McDonald's and the Class Share Common Questions of Law and Fact

 McDonald's and the class plaintiffs' securities fraud claims have much in common. Both rely substantially on the allegedly false and misleading financial statements issued by defendants in 1993 and 1994. And just like the class plaintiffs, McDonald's allegedly suffered a tremendous decline in the value of its investment when defendants began to disclose the true state of the company in November 1994. These shared allegations weighed heavily in our finding that Mc-

---

8. "Applicants [for intervention under Rule 24] often will rely alternatively on both subdivision (a) and subdivision (b) and it is not at all uncommon for a court to hold that intervention will be allowed without specifying which branch of the rule it considers to be on point." 4A CHARLES A. WRIGHT & ARTHUR R. MILLER, *supra,* § 1092, at 231. Although some courts are content to leave the type of intervention granted nebulous, we feel it is appropriate to specify that McDonald's meets the requirements under both subsections.

9. Rule 24(b)(2) has been interpreted to permit intervention more liberally than does subsection (a)(2):

 [Rule 24(b)(2) ] does not specify any particular interest that will suffice for permissive intervention, and, as the Supreme Court has said, it "plainly dispenses with any requirement that the intervener shall have a direct personal or pecuniary interest in the subject of the litigation." Indeed, it appears that the intervener-by-permission does not even have to be a person who would have been a proper party at the beginning of the suit.... Permissive intervention may be permitted when the intervener has an economic interest in the outcome of the suit.... Close scrutiny of the kind of interest the intervener is thought to have seems especially inappropriate since.... The rule requires only that his claim or defense and the main action have a question of law or fact in common.... If the would-be intervener's claim or defense contains no question of law or fact that is raised also by the same action, intervention under this branch of the rule must be denied. If there is a common question of law or fact, the requirement of the rule has been satisfied and it is then discretionary with the court whether to allow intervention.

 7C CHARLES A. WRIGHT & ARTHUR R. MILLER, *supra,* § 1911, at 356–63 (citations omitted).

Donald's was a member of the original class; only by virtue of this Court's May 27, 1997 ruling cutting back the class period is McDonald's outside the current class. Admittedly, the way in which McDonald's acquired Discovery Zone stock differs from the open market investors' purchases. However, as we explained earlier, any individual market reliance issues do not negate the common questions or require McDonald's to pursue separate litigation.

McDonald's further demonstrates commonality with its willingness to adopt the most recent class complaint as its own. *See Weisman v. Darneille*, 89 F.R.D. 47, 52 (S.D.N.Y.1980) (finding that intervener and class have "questions of law and fact in common" for purposes of Rule 24(b)(2) intervention because the intervener's "complaint is virtually identical to that filed by Weisman in the present action"). McDonald's attached a copy of the SACAC to its intervention papers, pledging that "no additional substantive issues will be raised by McDonald's." Mot. Int. at 12. We will hold McDonald's to its promise.

For these reasons (most of which are elaborated upon in section II.A. of the opinion ruling that McDonald's was a member of the original class) McDonald's easily meets the requirement of sharing common questions of law and fact with the class.

**B. McDonald's Application Is Timely**

The timeliness analysis is substantively the same under both subsections of Rule 24. *Compare Reich v. ABC/York–Estes Corp.*, 64 F.3d 316, 321 (7th Cir.1995) (discussing timeliness standards for intervention as of right) *with Romasanta v. United Airlines, Inc.*, 537 F.2d 915 (7th Cir.1976) (setting forth timeliness standards for permissive intervention).[10] There is, however, authority supporting the proposition that the timeliness requirements are more stringently applied in permissive

intervention cases. *See, e.g., Brink v. DaLesio*, 667 F.2d 420, 428 (4th Cir.1981) ("Because intervention was as of right, the timeliness requirement of Rule 24 should not be as strictly enforced as in a case where intervention is only permissive."); *Mountain Top*, 72 F.3d at 369 (under Rule 24(a), "courts should be reluctant to dismiss a request for intervention as untimely, even though they might deny the request if the intervention were merely permissive."). Nevertheless, we believe that our searching inquiry in section III.A. of this opinion, which analyzes each timeliness factor in detail, more than adequately demonstrates that McDonald's motion to intervene is timely for purposes of both intervention as of right and permissive intervention.

**C. This Court Has Jurisdiction Over McDonald's Claim**

This Court has jurisdiction over McDonald's federal securities fraud claims under 28 U.S.C. § 1331.

**D. Discretionary Factors**

The discretionary factors consist mainly of considering prejudice to the original parties if intervention is granted, and prejudice to the applicant if intervention is denied. *Romasanta*, 537 F.2d at 917–19; *Security Ins. Co. of Hartford*, 69 F.3d at 1381 (holding that "in exercising that discretion, the court must give some weight to the impact of the intervention on the rights of the original parties"). As noted in CHARLES A. WRIGHT & ARTHUR R. MILLER, *supra*, § 1913, at 393–94, "[t]he exercise of discretion by a particular judge, responding to all the circumstances of a particular case, is not likely to be of much help to another judge faced with a different case. Accordingly precedent is of very little value on this point." Based on our earlier discussion (in section III.A.) of prejudice to the current class, the defendants, and to Mc-

---

10. *Reich* defined the inquiry as "essentially one of reasonableness: potential interveners need to be reasonably diligent in learning of a suit that might affect their rights, and upon so learning they need to act reasonably promptly." 64 F.3d at 321. It also required consideration of prejudice to the original parties if intervention were granted, and prejudice to the intervener if de-

nied. *Id. Romasanta* stated that "timeliness is to be determined from all of the circumstances" and listed the relevant factors as "the stage of the litigation at which the intervention is sought, the interests of the interveners, the purposes of the statute under which the suit is brought and the relative harm to the parties." 537 F.2d at 917–18. It also assessed relative prejudice. *Id.*

Donald's, we find that these discretionary factors weigh in favor of permissive intervention. McDonald's thus satisfies all the requisites for intervening under Rule 24(b)(2).

## V. Alleged Waiver of Claims

In a final attempt to defeat McDonald's motion, defendants argue that McDonald's cannot intervene under any theory because it has waived its securities fraud claims by contract. Defendants insist that by virtue of the August 30, 1994 merger agreement, "McDonald's has lost any claim it might have had based upon any inaccuracy in Discovery Zone's financial statements." Def.'s Resp. Mot. Int. at 5. The merger agreement provides that "any recovery for breach of representation, warranty, covenant or agreement ... shall be subject to the provisions of Article XI." (Def.'s Resp. Mot. Int. Ex. F. ¶ 12.1.) Article XI states that the majority of representations and warranties, including those regarding the accuracy of DZ's financial statements, survived only until December 31, 1995, and that "[n]o claim for the recovery of indemnifiable damages based upon the inaccuracy of such representations and warranties may be asserted by McDonald's after such representations and warranties shall thus be extinguished...." (*Id.* ¶ 11.2.) Section 11.2 goes on to state that "[e]xcept as expressly stated herein, the remedies provided for in this Section 11.2 shall be the sole monetary remedy available to McDonald's under this Agreement." (*Id.*)

■ A waiver of future unknown securities fraud claims under the 1934 Act is explicitly precluded by statute. *See* 15 U.S.C.

§ 78cc(a) ("Any condition, stipulation, or provision binding any person to waive compliance with any provision of this chapter or of any rule or regulation thereunder, or of any rule of an exchange required thereby shall be void."). The Seventh Circuit explained in *Goodman v. Epstein,* 582 F.2d 388 (7th Cir. 1978), that this provision "mandates that a purported release of claims under the federal securities laws is valid only as to mature, ripened claims of which the releasing party had knowledge before signing the release." *Id.* at 402. Although the court placed on the party signing the release a duty to attempt to discover any fraud about which it "should have known upon reasonable inquiry," once the party makes that inquiry "any deception by those persons [seeking the release] at that point could amount to fraud in the procurement of the release"—voiding it. *Id.* at 403, 404.

■ At the time of the merger, McDonald's securities fraud claims were not ripe; defendants had yet to disclose the true financial state of the company, and the DZ common stock price remained high. McDonald's discharged its "duty of inquiry" by conducting due diligence prior to the merger's closing. Because it was entitled to rely on the accuracy of DZ's financial statements under the agreement, defendants' alleged misrepresentations in those statements amounted to fraud in the procurement of the release, rendering it invalid. Consequently, the alleged waiver in the merger agreement is ineffective to extinguish McDonald's claims in this action.[11]

---

**11.** Defendants raise a new argument for the first time in their surreply to McDonald's intervention motion—that McDonald's is time-barred from intervening under the statute of repose applicable to securities fraud claims articulated in *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* 501 U.S. 350, 363–64, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991). Notwithstanding that it is improper to raise new arguments in a surreply (or even a reply, for that matter), this argument is easily dismissed. Because McDonald's was part of the class until May 27, 1997, the statute of repose was legally tolled between the lawsuit's filing and this date. *See Crown, Cork & Seal Co. v. Parker,* 462 U.S. 345, 353–54, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983) (" '[T]he commencement of a class action suspends the applicable statute of limitations as to all asserted members of the

class who would have been parties had the suit been permitted to continue as a class action. Once the statute of limitations has been tolled, it remains tolled for all members of the putative class until class certification is denied.' ") (quoting *American Pipe & Constr. Co. v. Utah,* 414 U.S. 538, 551, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974)). This tolling applies to the *Lampf* bar of repose if the putative class member's claims "concern the same evidence, memories, and witnesses as the subject matter of the original class suit...." *Salkind v. Wang,* 1995 WL 170122, at * 3 (D.Mass. Mar. 30, 1995) ("Although equitable tolling is inapplicable, *American Pipe* does toll the *Lampf* bar of repose for as many of Salkind's claims which are part of a class action against the same defendant(s) until the class is decertified....");

## VI. Scope of Intervention

■ It is axiomatic that courts may put limitations on a party's ability to intervene permissively under Rule 24(b)(2).[12] However, courts have also exercised discretion in limiting intervention as of right under 24(a)(2). According to 7C CHARLES A. WRIGHT & ARTHUR R. MILLER, *supra,* § 1922, at 505:

> It had been supposed ... that conditions could not be imposed on one who intervened of right and that he had all the privileges of an original party. Rule 24(a) does not authorize the imposition of conditions and the court, at least in theory, has no discretion to refuse intervention to one who satisfies the requirement of the rule. However, the Advisory Committee Note to the 1966 Amendment of Rule 24(a) contains the following statement: "An intervention of right under the amended rule may be subject to appropriate conditions or restrictions responsive among other things to the requirements of efficient conduct of the proceedings." The Advisory Committee cites no authority for this statement.... Nevertheless several courts have shown a willingness to accept the Note at face value and to allow the imposition of conditions on an intervener of right. So long as these conditions are reasonable and are of a housekeeping nature, this view is likely to prevail.

Justice Brennan's concurrence in *Stringfellow v. Concerned Neighbors in Action,* 480 U.S. 370, 107 S.Ct. 1177, 94 L.Ed.2d 389 (1987), confirms this view, explaining that "restrictions on participation may also be placed on an intervener of right and on an original party." *Id.* at 383, 107 S.Ct. 1177

(citing Fed.R.Civ.P. 24 Advisory Committee Notes).

One type of condition courts have imposed on intervention as of right is to grant it for the limited purposes of allowing the intervener to participate in future settlement negotiations and appeal any settlement approved by the court. *See, e.g., Buchet v. ITT Consumer Fin. Corp.,* 845 F.Supp. 684, 697 (D.Minn. 1994). In addition, the Seventh Circuit has permitted putative class members to intervene solely for the purposes of appealing an earlier denial of class certification that became a final order when the court approved a settlement for the individual plaintiffs. *See Romasanta v. United Airlines, Inc.,* 537 F.2d 915, 919 (7th Cir.1976) ("It is entirely proper then to permit putative class members here to intervene for the purpose of pursuing an appeal of the adverse class action determination.").

■ We believe limiting intervention along these lines is equally appropriate in this case. Given that this suit is currently in a settlement posture, McDonald's may intervene to participate in settlement negotiations, to appear at any fairness hearing on a proposed settlement, and to appeal any settlement order entered by this Court. If McDonald's does not succeed in these endeavors, we will permit it to intervene for purposes of appealing this Court's rulings conforming the class period to the date of the latest class representative's purchase.[13] Our rulings to this effect are analogous to a complete denial of class certification from McDonald's perspective, given our holding in this opinion that McDonald's would be a class member but for our May 27, 1997 order ending the class period on July 19, 1994.

*Mott v. R.G. Dickinson & Co.,* 1993 WL 63445, at *5 (D.Kan. Feb. 24, 1993) (acknowledging that *Lampf's* bar of repose is legally tolled as to putative class members suing the same defendants named in the initial class complaint until certification is denied). Given that McDonald's is adopting the class complaint, the statute of repose applicable to its claims was tolled beginning on the suit's filing date, November 28, 1994 (three months after its DZ stock purchase), and did not resume until McDonald's was effectively cut from the class on May 27, 1997. McDonald's moved to intervene approximately 5½ months later. Because only 8½ months of the three-year statute of repose has passed, McDonald's motion to intervene is not time-barred.

**12.** "Since the trial court has full discretion to grant or deny an application for permissive intervention under Rule 24(b), it may if it chooses impose conditions on its grant of the application." 7C CHARLES A. WRIGHT & ARTHUR R. MILLER, *supra,* § 1922, at 502.

**13.** Such an appeal must, of course, await entry of a settlement order or judgment in this case. Our rulings on class certification will not become final appealable orders until that time. *See Coopers & Lybrand v. Livesay,* 437 U.S. 463, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978).

This puts McDonald's in the same position as the putative class members in *Romasanta*; as such, it has the same right to appeal our adverse class determinations.

### CONCLUSION

This Court would like nothing more than to see an end to this nearly four-year-old lawsuit. It recognizes that the parties' proposed settlement was not reached without contentious negotiations and substantial compromise. Nevertheless, the law requires that McDonald's be allowed to intervene in this case. McDonald's alleges the same course of fraudulent defendant conduct and the same kind of injury as the class plaintiffs, and, until September of last year, believed that class counsel were adequately representing its interests. Although prolonging this litigation is as repugnant to the Court as anyone else, we have no other choice under the law and facts presented here.

McDonald's motion to intervene is therefore granted as modified above.[14] All parties are hereby ordered to attend a status hearing on September 24, 1998, at 9:15 a.m.

14. We must point out that McDonald's is not joining the suit as a class member or class representative, but rather as a separate party representing its own interests. As such, McDonald's addition to this lawsuit has no impact on the ending date of the class period, and does not bring with it any DZ investors who purchased their shares between July 20 and August 30, 1994.